JUDITH CAMAC COHEN, Plaintiff v. MARVIN ALAN COHEN, Defendant

No. 8925DC1161

(Filed 2 October 1990)

**1. Divorce and Alimony § 24 (NCI3d)— child support—order prior to equitable distribution—no error**

The trial court did not err by entering a child support order prior to determination of a pending equitable distribution action. The language of N.C.G.S. § 50-20(f) contemplates that a child support order may precede an equitable distribution order, and no child support order is ever final. Delaying the child support order in this case until after the equitable distribution issue was decided would have prolonged an already long-pending case.

**Am Jur 2d, Divorce and Separation § 923.**

**Divorce and separation: effect of trial court giving consideration to needs of children in making property division— modern status. 19 ALR4th 239.**

**2. Divorce and Alimony § 24.9 (NCI3d)— child support—findings—sufficient**

The trial court made sufficient findings of fact to support its child support order of $37,871.89 a year for two children where the court adjusted the payment downward from $57,500; the record is replete with evidence that the family had enjoyed a very high standard of living; the trial court incorporated by reference defendant's affidavit that outlined his expenses and debts; the ability of the father to pay was not an issue; and the findings regarding the wife's estate demonstrated the requisite specificity despite the trial court's reluctance to place an exact dollar figure on plaintiff's estate.

**Am Jur 2d, Divorce and Separation §§ 1039-1042.**

**Excessiveness or adequacy of money awarded as child support. 27 ALR4th 1864.**

**3. Divorce and Alimony § 24.6 (NCI3d)— child support—percentage of custody—evidence sufficient**

There was sufficient evidence in a child support action to support the finding that defendant had physical custody

COHEN v. COHEN

[100 N.C. App. 334 (1990)]

of the children ten percent of the time and therefore should pay ninety percent of the support expenses during that period.

**Am Jur 2d, Divorce and Separation §§ 1039-1042.**

**Excessiveness or adequacy of money awarded as child support. 27 ALR4th 1864.**

4. **Divorce and Alimony § 24.1 (NCI3d) — child support — guidelines — not considered**
    The trial court did not err in a child support action by failing to consider the child support guidelines then in effect where the guidelines were only advisory in nature at the time the order was entered. The trial judge at that time was neither required to follow nor refer to the advisory guidelines in his order.

**Am Jur 2d, Divorce and Separation §§ 1039-1042.**

**Excessiveness or adequacy of money awarded as child support. 27 ALR4th 1864.**

5. **Divorce and Alimony § 24.1 (NCI3d) — child support — use of formula — no error**
    The trial court did not err in its use of a formula in determining the final child support payment, although a portion of the award was reduced, where the trial judge used a cost-sharing formula adjusted to reflect monies saved by the custodial parent while the children were visiting the non-custodial parent and to reflect the cost of transporting the children between the two houses for visitation. The visitation reduction portion of this formula was rejected because it ignored the fact that certain costs of the custodial parent are not removed when a child visits a non-custodial parent. It was noted that North Carolina adopted guidelines based on the income-sharing approach for determining child support as of 1 July 1990, and that use of any cost-sharing formula by a trial judge is now improper in North Carolina.

**Am Jur 2d, Divorce and Separation §§ 1039-1042.**

**Excessiveness or adequacy of money awarded as child support. 27 ALR4th 1864.**

**6. Divorce and Alimony § 24.1 (NCI3d)— child support—retro-active—actual expenditures**

The trial court did not err in a child support action by awarding retroactive child support based solely on evidence of actual expenditures. Although plaintiff wife contended that defendant should be ordered to pay retroactive support at the prospective rate, retroactive support is based solely on the amount actually expended for the support of the minor children during the time in question.

**Am Jur 2d, Divorce and Separation §§ 1039-1042.**

**Excessiveness or adequacy of money awarded as child support. 27 ALR4th 1864.**

**7. Divorce and Alimony § 24.1 (NCI3d)— child support—income tax exemption—assigned to husband**

The trial court did not err in a child support action by assigning to defendant husband the right to claim the minor children as dependents for income tax purposes. N.C.G.S. § 105-149, which until 1989 provided that the parent furnishing the chief support of the child was entitled to the exemption, has been repealed in an apparent effort to bring North Carolina's tax laws into conformity with the 1984 revisions of federal tax statutes. Federal law provides that the custodial parent may waive the right to claim an exemption, and several courts have held that a trial court may order a custodial parent to waive the right to claim the exemption.

**Am Jur 2d, Divorce and Separation §§ 1019, 1020, 1025.**

**State court's authority, in marital or child custody pro-ceeding, to allocate federal income tax dependency exemption for child to noncustodial parent under sec. 152(e) of the Inter-nal Revenue Code (26 U.S.C.S. sec. 152(e) ). 77 ALR4th 786.**

**8. Divorce and Alimony § 27 (NCI3d)— child custody and support—attorney fees**

The trial court did not err by failing to award attorney fees where the case involved both child support and child custody from June of 1986 until 8 March 1988, when the child custody issue was resolved through negotiations arbitrated by the trial judge after trial began; the trial judge determined that as of 8 March the proceeding became one of only child

COHEN v. COHEN

[100 N.C. App. 334 (1990)]

support in which he had to make the additional finding that defendant had refused to provide adequate support at the time the action was instituted in order to award attorney's fees; the trial judge found that defendant had provided adequate support when the suit was first filed and refused to award attorney's fees; and the judge found that even if the action was both a custody and support case plaintiff had sufficient means to defray the expenses of the suit.

**Am Jur 2d, Divorce and Separation § 597.**

**Amount of attorneys' fees in matters involving domestic relations. 59 ALR3d 152.**

APPEALS by plaintiff and defendant from order entered 26 May 1989 by *Judge Jonathan L. Jones* in CATAWBA County District Court. Heard in the Court of Appeals 3 May 1990.

Plaintiff filed this complaint on 6 June 1986 seeking alimony, custody of the two minor children of the parties, child support and attorney fees. Defendant filed various responsive motions in August 1986 and responsive pleadings and a counterclaim in March 1987. Reply to the counterclaim was filed in May 1987. Defendant was allowed to amend his counterclaim to include a claim for equitable distribution of the marital property. Defendant filed an Offer of Judgment pursuant to Rule 68 in December 1987. Plaintiff filed a Voluntary Dismissal of her alimony claim and a Motion in the Cause concerning payment of retroactive child support in March 1988.

Trial in this matter began on 8 March 1988. Upon the call of the case, the trial judge conducted a pretrial conference, which was followed by a period of negotiations over child custody and visitation with the judge acting as an informal referee. Agreement on these two issues was reached. Trial on the issue of child support continued for several days, and the trial judge filed his written order concerning child support on 7 October 1988. On 14 October 1988, defendant filed a motion requesting a new trial.

A hearing was held on defendant's motion and by a Final Order filed on 26 May 1989 the 7 October 1988 Order was withdrawn and the relief sought by defendant in his Rule 59 motion was granted in part and denied in part. The Final Order contained seventy Findings of Fact and twenty-five Conclusions of Law. Among those, the trial judge found that the annual expenditures necessary

COHEN v. COHEN

[100 N.C. App. 334 (1990)]

to support the two children at their accustomed standard of living was $57,600. To determine the actual child support payment required of the non-custodial parent, which in this case is the father, the trial judge used a formula that factored in the relative incomes of two parties and the percentage of time the children spent with each parent. The trial judge made one other adjustment to the amount derived from applying the formula and determined that defendant father must pay $37,871.89 annually or $3,156 a month for the support of the two children. From this Order, both parties appealed.

*Long & Cloer, by Samuel H. Long, III, for plaintiff appellant and plaintiff appellee.*

*Rudisill & Brackett, by Curtis R. Sharpe, Jr., for defendant appellant and defendant appellee.*

ARNOLD, Judge.

[1] First, we examine the assignments of error brought forth by defendant on his cross-appeal. Defendant contends it was error for the trial judge to enter the child support Order prior to a determination of the equitable distribution issue then pending in the action. On 15 October 1987, defendant amended his Answer and Counterclaim to add a plea for equitable distribution. The amendment was filed more than sixteen months after this case was originally filed and as the matters of child custody and support were moving toward trial. With substantial assets at issue, the equitable distribution matter was clearly going to require lengthy discovery. The time period for discovery on the equitable distribution claim had run less than half its course when the child support and custody matters went to trial on 8 March 1988.

Defendant cites several Court of Appeals cases that contain language and reasonable policy reasons advancing his position on this issue. *See Soares v. Soares,* 86 N.C. App. 369, 371, 357 S.E.2d 418, 419 (1987). Nevertheless, we find the governing statute dispositive. The second sentence of N.C. Gen. Stat. § 50-20(f) (1987) provides: "After the determination of an equitable distribution, the court, upon request of either party, shall consider whether an order for alimony or child support should be modified or vacated pursuant to G.S. 50-16.9 or 50-13.7." This language obviously contemplates that a child support order may precede an equitable distribution order. No child support order is ever final and delaying

the child support order in this case until after the equitable distribution issue was decided would have prolonged an already long-pending case. The trial court's decision was intelligent and proper under the statute. Defendant's assignment of error here is overruled.

[2] Next defendant contends that the trial judge made insufficient findings of fact to support the child support Order. Specifically, defendant argues the trial court failed to make findings concerning defendant's expenses or the value of plaintiff's estate. A trial court hearing a child support matter is required to find facts and from those facts state its conclusions of law. Child support is determined by considering the needs and accustomed standard of living of the children and the wealth of the parents. *Dishmon v. Dishmon*, 57 N.C. App. 657, 292 S.E.2d 293 (1982). N.C. Gen. Stat. § 50-13.4(c) (1989 Cum. Supp.) provides:

> Payments ordered for the support of a minor child shall be in such amount as to meet the reasonable needs of the child for health, education, and maintenance, having due regard to the estates, earnings, conditions, accustomed standard of living of the child and the parties, the child care and homemaker contributions of each party, and other facts of the particular case.

While defendant attacks two specific findings of the Order, the gist of his contention here is that the support payment ordered is too high. In his brief, he states, "The suggestion that over $57,500.00 per year is needed for support and maintenance of two children . . . shocks the conscience."

First, we remind defendant that the trial judge adjusted the support payment down almost $20,000 to $37,871.89. We also point out that the primary focus of any child support payment is the needs of the child, a determination largely measured by the "accustomed standard of living of the child." The record in this case is replete with evidence that prior to the dissolution of the marriage, the Cohen family enjoyed a very high standard of living. More to the point, a review of the record and transcript indicates the evidence supports the findings under attack here by defendant.

In a child support matter, the trial judge must make written findings of fact that demonstrate he gave "due regard" to the "estates, earnings [and] conditions . . . of each party." G.S. § 50-13.4(c). While defendant's expenses were not discussed in the Order, in Finding of Fact 45 the trial judge incorporated by reference defend-

ant's affidavit that outlined his expenses and debts. Moreover, under the circumstances of this case, detailed findings concerning defendant's expenses were not necessary. Based upon defendant's own testimony, the trial court found that defendant could pay any support amount the court might order, up to and including the amount requested by the plaintiff in her affidavit—$71,318.04 per year. The ability of the father to pay simply was not an issue here.

Concerning plaintiff's estate, the court found that she is currently earning $22,000 per year; that she and defendant will share in a sizeable marital estate, but that equitable distribution had not yet been made; that during the marriage and since the separation defendant had controlled all the substantial assets of the parties; and that during the trial defendant had transferred to plaintiff stock with an approximate gross value of $250,000. The trial judge also made the following two findings:

40. The Plaintiff-wife has debts of approximately $100,000.00, the main portion of which were incurred by her for attorney fees, as set forth in her Affidavit and testimony.

41. [I]t is unclear to the Court to what extent the assets which she now possesses will be available to contribute to the support of children, and any attempt to estimate such would be speculative by the Court. The Court also notes that despite the substantial face value of the stock transferred to the Plaintiff by the Defendant during the course of the trial, in order for the Plaintiff to utilize those assets it will be necessary for her to liquidate the stock and thereby incur some tax liability in an amount which is also unknown to the Court. The Court finds accordingly, that any effort to determine the true net worth of the Plaintiff's assets would be speculative and inappropriate.

Defendant argues that the trial court's refusal to specify the value of plaintiff's estate was error. We disagree. A trial judge must make conclusions of law based on factual findings specific enough to show the appellate courts that the judge took *due regard* of the parties' estates. *Dishmon,* 57 N.C. App. 657, 660, 292 S.E.2d 293, 295. The findings referred to above demonstrate the requisite specificity required of a trial judge in a matter such as this despite his understandable reluctance to place an exact dollar figure on plaintiff's estate. Defendant's assignment of error is overruled.

[3] Defendant next contends the trial court erred in determining that between December 1986, when the parties separated, and the entry of the Final Order in this matter in May 1988, that defendant had physical custody of the children ten percent of the time and therefore should pay ninety percent of the support expenses during that period. Contrary to defendant's contention, the record contains evidence sufficient to support this finding. The temporary custody orders pursuant to which Mr. Cohen visited with his children between the separation of the parties and the trial afforded him visitation with the children at least one weekend a month, two weeks during the summer of 1987 and a week at Christmas of 1987. These visitation periods total approximately ten percent of the period in question. Other evidence in the record indicates that because of the highly contentious feelings between plaintiff and defendant even less visitation actually occurred during portions of that period. Defendant's assignment of error on this issue is overruled.

[4] Now we turn to plaintiff's assignments of error. First, she contends that the trial court erred by setting the amount of child support too low. Specifically, she faults the trial judge for his failure to consider North Carolina's Child Support Guidelines then in effect in determining the child support payment. See G.S. § 50-13.4(c1). She also contends that the formula employed by the trial judge to determine defendant's support payment does not properly consider her ability to provide support relative to the ability of defendant pursuant to G.S. § 50-13.4(c) and the applicable case law. See Plott v. Plott, 313 N.C. 63, 326 S.E.2d 863 (1985). Finally, she argues that the trial court's equal division between plaintiff and defendant of the estimated $5,000 a year to transport the children between North Carolina and Pennsylvania pursuant to the visitation order is unfair in light of the fact that plaintiff's gross income is one-tenth that of defendant's.

The trial court's Order makes no mention of North Carolina's Child Support Guidelines. G.S. § 50-13.4(c1). However, at the time the Order was entered in June 1989, these Guidelines were only advisory in nature. The Guidelines became presumptive as of 1 October 1989. 1989 N.C. Sess. Laws c. 529, s. 9. (The advisory Guidelines in effect when this Order was entered, which became presumptive in October 1989, have since been rewritten. New presumptive guidelines became effective 1 July 1990. Administrative Office of the Courts, North Carolina Child Support Guidelines

COHEN v. COHEN

[100 N.C. App. 334 (1990)]

AOC-A-162 (July 1990)). Therefore, at the time this Order was entered, the trial judge was neither required to follow nor refer to the advisory guidelines in his Order. *Morris v. Morris*, 92 N.C. App. 359, 374 S.E.2d 441 (1988).

[5] Plaintiff next assigns as error the use by the trial judge of a formula in determining the final child support payment. Plaintiff argues that the formula is faulty on its face and that its application was error. While we disagree with most of plaintiff's contentions, we are very wary of this formula and might well reject its utilization entirely in most other contexts. However, with one modification, we will not disturb its use here.

Essentially all child support formulas fall into one of two categories. They are either "cost-sharing" or "income-sharing" formulas. *See* Giampetro, *Mathematical Approaches to Calculating Child Support Payments: Stated Objectives, Practical Results, and Hidden Policies,* 20 Family L.Q. 373 (1986); Hunter, *Child Support Law and Policy: The Systematic Imposition of Costs on Women,* 6 Harvard Women's L.J. 1 (1983). The formula used in this case is a cost-sharing formula. Under this approach, the payment of each party is equal to a fraction that represents the relationship between the party's incomes which is then multiplied by the cost of raising the child. In this case, the trial court found that defendant's average annual gross income is $200,000 and plaintiff's gross income is $22,000. To determine defendant's support payment, the following calculations are made: (a) add plaintiff's gross income to defendant's gross, which yields a total of $222,000; (b) divide defendant's income by the total for both parties or $200,000 divided by $222,000, which yields the fraction 9/10; (c) multiply the annual needs of the children by 9/10 or $57,600 times 9/10, which yields $51,891.89. Plaintiff, on the other hand, is responsible for 1/10 of the support payment, which would be $57,600 minus $51,891.89 or $5,708.11. Stated another way, because defendant here earns 9/10 of the total income of both supporting parents he should pay 9/10 of the costs to support the children.

The formula used in this case involves one further step. After the above calculations are made, the payment of the non-custodial parent, in this case defendant, is further reduced by subtracting from his support payment an amount calculated to represent monies the custodial parent saves while the children are visiting with the non-custodial parent. According to the child custody arrange-

COHEN v. COHEN

[100 N.C. App. 334 (1990)]

ment in this case, the children spend eighty percent of each year with the mother and twenty percent with the father. Applying our numbers to the last step in this formula: (a) multiply the non-custodial parent's portion of the support payment by the amount of time the children will spend with him, or $51,891.89 times twenty percent, which yields $10,378.38; (b) then subtract $10,378.38 from $51,891.89, which yields $41,513.51. Although we fail to understand why, the trial judge then subtracted from $41,513.51 the product of the annual support obligation of the mother, or $5,708.11, multiplied by the amount of time (twenty percent) the father has the children, which yields $1,141.62. This calculation, $41,513.51 minus $1,141.62, yields a support payment of $40,371.89.

The trial judge made one final adjustment to the support amount. He estimated that the expense of transporting the two children between the defendant's home in North Carolina and plaintiff's home in Pennsylvania pursuant to the visitation agreement would be $5,000 a year. He split this expense evenly between the two parties and subtracted plaintiff's portion of this obligation, $2,500, from defendant's payment of $40,371.89, which yields the support payment of $37,871.89.

The cost-sharing formula used in this case was developed by an attorney named Maurice Franks. Franks, *How to Calculate Child Support*, Case & Comment, January-February 1981 at 3. However, Franks' formula has been severely criticized over the past decade and now stands almost entirely discredited. *See* Giampetro, *supra*, at 378-82; Hunter, *supra*, at 12; Polikoff, *The Inequity of the Maurice Franks Custody Formula*, 8 District Lawyer 14 (November/December 1983). One author states:

The Franks formula is merely the worst of those formulas which reflect the "cost-sharing" approach to child support awards. . . . [It] seeks a means to keep child support awards as low as possible. It has never been accepted as legitimate by any court. In fact, no one seeking to address the failure of the current child support system to provide adequately for the rearing of children in single parent families considers the Franks proposal to have any merit whatsoever.

Polikoff, *supra*, at 15, 16.

Another author compared seven child support formulas using a hypothetical family, and the Franks formula produced the lowest

payment of the seven. Hunter, *supra*, at 11. Of the states that have enacted presumptive child support guidelines, none have adopted the Franks formula. Polikoff, *supra*, at 16. And while several courts have utilized a part of the Franks method, we have failed to uncover any case that has employed the entire formula in determining a support payment. *See Smith v. Smith*, 290 Or. 675, 626 P.2d 342 (1981); *Young v. Williams*, 583 P.2d 201 (Ala. 1978); *Williams v. Budke*, 186 Mont. 71, 606 P.2d 515 (1980).

The primary criticism of the cost-sharing approach is the inherent illogic in attempting to determine the cost of raising a child without looking at the economic status of the parents. Franks takes the position that the costs of raising a child are virtually the same regardless of the income of the parents. While in the case before us it is clear that the trial judge took into consideration more than just the basic needs of raising the two children, such may not always be the case when this formula is employed. In most cases the application of this formula places an inequitable burden on the custodial parent, which is usually the lower income-producing mother. Hunter, *supra*, at 10. Furthermore, it is apparent that Maurice Franks, who wrote "How to Avoid Alimony," and "Winning Custody: A No-Holds-Barred Guide for Fathers," is "an advocate for the financial interests of men, not for the best interest of children or for equity in post-divorce arrangements." Polikoff, *supra*, at 15. It is also clear that support awards often produce tremendous inequities in the standards of living of the two post-divorce homes. One study showed that the post-divorce standard of living for fathers increases forty-two percent, while the post-divorce standard of living for mothers and their children decreases seventy-three percent. Weitzman, *The Economics of Divorce: Social and Economic Consequences of Property, Alimony and Child Support Awards*, 28 U.C.L.A. L. Rev. 1181, 1251 (1981). The application of the Franks formula simply perpetuates and even worsens an already inequitable situation.

Nevertheless, we stop short of rejecting outright all aspects of this formula as applied in the case before us. First, the Franks formula and all other cost-sharing formulas can no longer be used in North Carolina. As of 1 July 1990, our state adopted guidelines based on the income-sharing approach for determining child support. These guidelines were promulgated by the Conference of Chief District Judges in accordance with G.S. § 50-13.4(c1). Income-sharing formulas ignore the problem of attempting to determine

the cost of raising a child and are based instead on the assumption that each parent will contribute all of his or her income to one fund. Then the formulas provide a method for equitably dividing the income among the family members. Income-sharing formulas seek to equalize the financial burden of divorce so that all family members experience about the same proportional reduction in their standard of living after the divorce. Polikoff, *supra*, at 14. While no support formula is without its problems, the income-sharing approach appears to address some of the built-in inequities of the cost-sharing approaches. Because use of any cost-sharing formula by a trial judge is now improper in North Carolina, we are not concerned by any precedent our partial endorsement of the Franks formula may otherwise establish.

Second, we are less concerned by the use of the Franks formula because it is apparent that the trial judge considered the "accustomed standard of living" of the children and not simply their basic requirements when he found that the annual needs of the two children totaled $57,600. Also we note that more flexibility must be accorded to trial judges in determining child support payments when the incomes of the parties involved are very high. Formulas are designed for application to typical situations and work best when average incomes are involved. Adjustments must be made when abnormally high or low numbers are involved. For example, North Carolina's new guidelines provide that when the combined gross incomes of the parents exceed $120,000, the "child support should be determined on a case-by-case basis." Administrative Office of the Courts, North Carolina Child Support Guidelines at 2. The combined annual incomes of the parents is $222,000. Thus, we are more reluctant in this particular case to reject the use of this formula.

We do reject, however, the application of the "visitation reduction" portion of the Franks formula. As we noted above, after the child support amount is divided proportionately between the parents according to their income, the Franks formula subtracts an amount of money calculated to represent what the custodial parent saves in expenses while the child is visiting with the noncustodial parent. The trial judge reduced defendant's portion of the support obligation from $51,891.89 down to $41,513.51 based on this theory. This reduction of twenty percent represents the amount of time each year the children will spend with defendant

under the visitation agreement. However, a reduction of the child support payment based on this factor was improper.

The visitation reduction factor is based on the faulty premise that when a child is visiting the non-custodial parent, the custodial parent is relieved of her support costs for that period. However, this ignores that certain costs of the custodial parent, such as housing and some portions of utilities and transportation expenses, are not removed when a child visits the non-custodial parent. Our review of the case law indicates that when one parent has *primary* custody and the visitation period with the non-custodial parent is relatively short — such as the twenty percent annual visitation period involved here — courts have denied motions by non-custodial parents to decrease their support obligations by claiming credit for money spent on a child during visitation. *See Young*, 583 P.2d 201; *Williams*, 186 Mont. 71, 606 P.2d 515; *Smith*, 290 Or. 675, 626 P.2d 342.

Alternatively, when the time a child spends with the non-custodial parent increases to an amount where both parents significantly share in the physical custody of the child, then it is clear that the custodial parent's costs for supporting the child will drop and some adjustment in the support payment should be made. North Carolina's new guidelines offer sound guidance in this area. Under our new system, an adjustment in the support obligation of the non-custodial parent is reduced *only* when each parent has the child for more than thirty-three percent of the year. Administrative Office of the Courts, Worksheet B Child Support Obligation Joint or Shared Physical Custody AOC-CV-628 (July 1990). For the foregoing reasons, we hold it was error to reduce defendant's support payment based on a visitation reduction factor when the period of visitation with him constituted only twenty percent of the year. We reverse this portion of the trial court's Order.

[6] Plaintiff next contends that it was error for the trial court to enter an award of retroactive child support in an amount of $12,165 for the eighteen-month period that began when the parties separated in November 1986 and ran until entry of the prospective child support award in May 1988. The court found, based on evidence of actual expenditures made for the children during the period, that defendant should have paid $25,515 or an average of $1,417.50 a month in support during the period. The court also found that defendant paid only $13,350 in support during that period and ordered

him to pay the difference which totaled $12,165. Plaintiff argues that defendant should pay the same amount in retroactive support for the eighteen-month period as the court ordered him to pay in prospective child support or $4,800 a month. However, retroactive child support is based solely on the amount actually expended for the support of the minor children during the time period in question. *Hicks v. Hicks*, 34 N.C. App. 128, 130, 237 S.E.2d 307, 309 (1977); *Warner v. Latimer*, 68 N.C. App. 170, 174-75, 314 S.E.2d 789, 792-93 (1984). Plaintiff's assignment of error is overruled.

[7] Plaintiff next excepts to the portion of the Order assigning to defendant the right to claim the minor children as dependents for income tax purposes. She concedes the assignment was correct under North Carolina law for North Carolina taxes, but contends it was invalid for federal tax purposes. We agree with plaintiff that assigning the exemption to defendant was valid under North Carolina, but we do so for a different reason than the one she cited. Further, we hold the assignment also was valid as applied to federal income taxes.

Plaintiff concedes the validity of the Order for purposes of North Carolina taxes citing N.C. Gen. Stat. § 105-149(a)(5)c, which until 1989 provided that the parent furnishing the chief support for the child, not the parent with primary custody, was entitled to claim the child as a tax exemption. If G.S. § 105-149 were applicable here, defendant could claim the children as dependents. However, that statute has been repealed in an apparent effort by the General Assembly to bring North Carolina's personal income tax laws into conformity with the 1984 revisions of the federal tax statutes. 1989 N.C. Sess. Laws c. 728, s. 1.3. Under federal law, the custodial parent, not the parent paying primary support, is entitled to claim the support exemption for a child under circumstances such as are present here. 26 U.S.C.A. § 152(e)(1) (Supp. 1990). However, the federal law also provides that the custodial parent may waive this right to claim the exemption. 26 U.S.C.A. § 152(e)(2).

In recent years, several jurisdictions have examined the question of whether a trial court may *order* a custodial parent to waive the right to claim the exemption. Several courts have held that such an order is valid. *Hughes v. Hughes*, 35 Ohio St. 3d 165, 518 N.E.2d 1213 (1988); *McKenzie v. Jahnke*, 432 N.W.2d 556 (1988); *Fleck v. Fleck*, 427 N.W.2d 355 (1988); *Nichols v. Tedder*, 547 So.2d

766 (1989). Following this line of case law, we hold that assigning the dependency exemption to defendant for all income tax purposes was valid.

[8] Finally, plaintiff contends that the trial court erred in failing to award plaintiff attorney fees *pendente lite* and in the Final Order. The trial court found that plaintiff incurred approximately $80,000 in attorney's fees in this matter. N.C. Gen. Stat. § 50-13.6 (1987) provides that where both child custody and child support are at issue, the trial court may award attorney fees "to an interested party acting in good faith who has insufficient means to defray the expenses of the suit." *Id*. Where only the issue of child support is present, however, the trial court must make an additional finding of fact that the party ordered to furnish support had refused to provide adequate support at the time of the institution of the proceeding. G.S. § 50-13.6; *Arnold v. Arnold*, 30 N.C. App. 683, 228 S.E.2d 48 (1976).

This case involved issues of both child support and child custody from June of 1986 until 8 March 1988, when the child custody issue was resolved through negotiations largely arbitrated by the trial judge. These negotiations occurred after trial of this matter had already begun. Nevertheless, the trial judge determined that as of 8 March 1988 the proceeding became one of only child support in which case to award attorney's fees he had to make the additional finding that defendant refused to provide adequate support at the time the action was instituted. On this point, the trial judge found that defendant had provided sufficient support when suit was first filed, and as a result, he refused to award plaintiff attorney's fees. In addition, the court found that even if the action was deemed to be both a custody and support case such that a finding of inadequacy of support at the initiation of the case was not a condition precedent for awarding attorney's fees, plaintiff had sufficient means with which to defray the expenses of the suit as of 10 May 1988 when defendant released to plaintiff approximately $250,000 worth of stock.

A trial judge is permitted considerable discretion in determining whether or not attorney's fees should be allowed in child support or custody cases. *Brandon v. Brandon*, 10 N.C. App. 457, 179 S.E.2d 177 (1971). A decision to disallow attorney's fees is limited only by the abuse of discretion rule. *Puett v. Puett*, 75 N.C. App. 554, 331 S.E.2d 287 (1985). Plaintiff herein has failed to show an

MARTIN v. RAY LACKEY ENTERPRISES

[100 N.C. App. 349 (1990)]

abuse of discretion by the trial court or the concomitant prejudice to her through the trial court's failure to award attorney's fees as she requested. Thus, we overrule her assignment of error here.

As to plaintiff's remaining assignments of error, we have reviewed the record and the transcript and found them to be without merit.

To summarize, we vacate the portion of the Order that reduces defendant's share of the support payment because of any visitation credit. The remainder of the Order is affirmed.

Affirmed in part and reversed in part.

Judges PHILLIPS and COZORT concur.