IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-145

Filed: 21 April 2020

Wake County, No. 16 CVD 6098

CHRISTI SEAL KLEOUDIS, Plaintiff,

v.

DEMETRIOS BASIL KLEOUDIS, Defendant.

Appeal by defendant from order entered 21 September 2018 by Judge Michael J. Denning in District Court, Wake County. Heard in the Court of Appeals 20 August 2019.

*Jackson Family Law, by Jill Schnabel Jackson, for plaintiff-appellee.*

*Nicholls & Crampton, PA, by Nicholas J. Dombalis, II, for defendant-appellant.*

STROUD, Judge.

Defendant-father appeals the trial court's permanent child support order. Because the trial court made sufficient findings of fact to support its determination of defendant-father's child support obligation, we affirm.

I.    Background

On 7 July 2016, plaintiff-mother filed a verified amended complaint against defendant-father for equitable distribution, permanent child support, and absolute divorce. The parties have two children, one of whom reached the age of majority

before the custody claim was filed, and a son, Neal, who was born in 2004.[1]  On 8 August 2016, Father filed an amended answer to the amended complaint and counterclaimed for custody and equitable distribution.  On 16 September 2016, a judgment of divorce was entered, and, on 24 October 2016, the trial court entered an interim distribution order.  On 25 October 2016, the trial court entered a temporary child custody order granting the parties joint legal custody.  The temporary custody order provided that Neal would reside primarily with Mother during the school year and set out a detailed schedule for physical custody for weekends, summers, and holidays.  On 9 November 2017, the trial court entered an Order Appointing Parenting Coordinator based upon its finding that this "action is a high-conflict case" and the appointment of a parenting coordinator would be in the child's best interest. The order specifically authorized the parenting coordinator to "adjust Defendant's visitation (both the regular schedule and the holiday/special time schedule) to accommodate Defendant's flight schedule,"[2] which would be set out in more detail in the permanent custody order.

On 23 October 2017, the trial court heard the parties' claims for permanent child custody and child support. On 19 January 2018, the trial court entered a Memorandum of Judgment/Order setting out "custodial provisions to be followed by

---

[1] We have used a pseudonym to protect the identity of the minor child.

[2] Father is a commercial airline pilot.

the parties until such time as entry of a permanent custody order" and noting that the terms were "rendered to the parties at the close of the evidence at their trial on permanent custody." This custodial schedule gave Mother primary physical custody and Father eight overnights per calendar month, to be exercised based upon Father's availability due to his work schedule. Father was required to provide a copy of his work schedule and overnight visitation dates each month to Mother and the parenting coordinator. On 29 May 2018, the trial court entered the permanent custody order, which set out essentially the same custodial schedule as in the Memorandum. On 21 September 2018, a permanent child support order was entered. Defendant appeals only the child support order.

## II.     Standard of Review

The trial court found the parties' combined monthly adjusted gross income was more than \$25,000 so the trial court did not use the Child Support Guidelines to calculate Father's child support obligation. Where the parties' incomes are above the Guidelines, the trial court must set child support "in such amount as to meet the reasonable needs of the child for health, education, and maintenance, having due regard to the estates, earnings, conditions, accustomed standard of living of the child and the parties, the child care and homemaker contributions of each party, and other facts of the particular case." N.C. Gen. Stat. § 50-13.4 (2017).

"Child support orders entered by a trial court are accorded substantial deference by appellate courts and our review is limited to a determination of whether there was a clear abuse of discretion." *Leary v. Leary*, 152 N.C. App. 438, 441, 567 S.E.2d 834, 837 (2002). Where the child support guidelines do not apply, the trial court must determine "child support on a case-by-case basis" and "the order must be based upon the interplay of the trial court's conclusions of law as to (1) the amount of support necessary to meet the reasonable needs of the child and (2) the relative ability of the parties to provide that amount." *Zaliagiris v. Zaliagiris*, 164 N.C. App. 602, 610, 596 S.E.2d 285, 291 (2004) (citations and quotation marks omitted).

> In determining the relative ability of the parties to pay child support, the trial court must hear evidence and make findings of fact on the parents' incomes, estates and present reasonable expenses. Although the trial court is granted considerable discretion in its consideration of the factors contained in N.C. Gen. Stat. § 50–13.4(c), the trial court's finding in this regard must be supported by competent evidence in the record and be specific enough to enable this Court to make a determination that the trial court took due regard of the particular estates, earnings, conditions, and accustomed standard of living" of both the child and the parents.

*Id.* (citations, quotation marks, ellipses, and brackets omitted).

III. Findings of Fact on Estates, Conditions, and Accustomed Standard of Living

Father first challenges several findings of fact and conclusions of law particularly "as to the estates, conditions, [and] accustomed standard of living of the child and the parties[,]" (original in all caps), but rather than challenging these

findings of fact as unsupported by the evidence, he argues the trial court should have made different findings based upon the evidence or failed to make additional necessary findings of fact. However, "[u]nchallenged findings of fact are binding on appeal." *See Peters v. Pennington*, 210 N.C. App. 1, 13, 707 S.E.2d 724, 733 (2011). The binding findings first note that the parties entered into a Separation Agreement and Property Settlement, which is part of the record, resolving all claims of child support up to 30 November 2016. As to specific findings of income and expenses, the trial court found:

> 10. Plaintiff is employed full-time as a statistician with Parexel. Plaintiff's current gross income from employment is $15,781 per month. After mandatory deductions (federal & state taxes, Social Security, Medicare) of $5,818 per month and voluntary deductions (health, dental & vision insurance, life insurance, disability insurance, medical spending account, and retirement) of $2,018 per month, Plaintiff's net after-tax income from employment is $8,035 per month.
>
> 11. In prior years, Plaintiff has received a bonus from Parexel that was tied to company performance, but Plaintiff received notification prior to the date of trial that no bonus will be paid in 2017.
>
> 12. Plaintiff received a substantial bonus in 2016 that resulted from work she had performed at GlaxoSmithKline some years prior to the date of separation. This bonus of $156,000 was divided equally between the parties in their equitable distribution settlement and is not considered by the Court as part of Plaintiff's income for purposes of calculating prospective child support.

13. Defendant is employed full-time as a commercial airline pilot with American Airlines. Defendant's current gross income from employment is $28,917 per month. After mandatory deductions (federal & state taxes, Social Security, Medicare, APA union dues) of $10,973 per month and voluntary deductions (health & dental insurance, life insurance, retirement) of $2,215 per month, Defendant's net after-tax income from employment is $15,729 per month.

14. Both parties report approximately the same amount of investment income, interest, and dividends resulting from marital investments that were divided equally between the parties as part of their property settlement. Neither party actually takes distributions or withdrawals from these investments, however, and the Court does not find that either party is required to deplete his/her assets to pay child support for the benefit of the minor child as set forth below.

15. The parties' combined gross income exceeds $300,000 per year, so that the parties are "off the Guidelines" for purposes of calculating their respective support obligations for the benefit of the minor child.

16. Plaintiff incurs reasonable and necessary monthly expenses for herself in the amount of $4,107 per month, calculated as follows:

 a. $2,885, or 50% of the Household Expenses from Plaintiff's September 2017 Financial Affidavit (excluding 100% of "Furniture & Household Furnishings" and 100% of "Legal Fees / Divorce Expenses"); plus

 b. $1,222, or 100% of the "Part 2: Individual Expenses" for self from Plaintiff's September 2017 Financial Affidavit.

. . . .

19. Defendant earns 65% and Plaintiff earns 35%

- 6 -

of the parties' total gross income of $44,698 per month. It is reasonable and appropriate for each party to pay a pro rata share of the child's reasonable and necessary monthly expenses in accordance with his/her pro rata share of their comparative gross income.

20.    Defendant's net ability to pay child support for the benefit of the child is $5,916 per month (i.e., $15,729 net income- $9,813 expenses). Defendant has the ability to pay his 65% share of the child's reasonable and necessary monthly expenses of $2,517 per month (i.e., $3,873 x 65%).

21.    Plaintiff's net ability to pay child support for the benefit of the child is $3,928 per month (i.e., $8,035 net income - $4,107 for "self" expenses). Plaintiff has the ability to pay her 35% share. of the child's reasonable and necessary monthly, expenses of $1,356 per month (i.e., $3,873 x35%).

We will first address Father's argument as to the trial court's findings regarding the parties' estates.

A.    Estates

Father first contends the trial court failed to make sufficient findings of fact regarding the parties' "estates:"

[t]here are no findings made by the Trial Court concerning the value of the parties' assets, including any separate assets that they may own that would not have been included in the marital assets that were distributed between them.  No findings were made regarding the value of each parties' investment accounts, bank accounts, real estate retirement accounts or other assets owned by them, all of which would bear on the relative ability of the parties to pay support and the accustomed standard of living of the minor child and the parties.
It is not enough that there may be evidence in the

> record sufficient to support findings which could have been
> made.

Thus, Father acknowledges that substantial evidence was presented regarding the estates of the parties but contends the findings of fact were not sufficient because the trial court did not make detailed findings as to the values of various assets and accounts.

North Carolina General Statute § 50-13.4(c) sets the standard for child support in cases not covered by the North Carolina Child Support Guidelines:

> Payments ordered for the support of a minor child shall be in such amount as to meet the reasonable needs of the child for health, education, and maintenance, having due regard to the estates, earnings, conditions, accustomed standard of living of the child and the parties, the child care and homemaker contributions of each party, and other facts of the particular case.

N.C. Gen. Stat. § 50-13.4(c) (2017).

The trial court noted its consideration of the estates of the parties and found that neither party would have to deplete his or her estate to support the child. Giving "due regard" to the estates of the parties does not require detailed findings as to the value of each individual asset but requires only that the trial court consider the evidence and make sufficient findings addressing its determination regarding the estates to allow appellate review. The trial court made several findings of fact regarding the parties' estates, and Father does *not* challenge those findings as unsupported by the evidence.

11.     In prior years, Plaintiff has received a bonus from Parexel that was tied to company performance, but Plaintiff received notification prior to the date of trial that no bonus will be paid in 2017.

12.     Plaintiff received a substantial bonus in 2016 that resulted from work she had performed at GlaxoSmithKline some years prior to the date of separation. This bonus of $156,000 was divided equally between the parties in their equitable distribution settlement and is not considered by the Court as part of Plaintiff's income for purposes of calculating prospective child support.

. . . .

14.     Both parties report approximately the same amount of investment income, interest, and dividends resulting from marital investments that were divided equally between the parties as part of their property settlement. Neither party actually takes distributions or withdrawals from these investments, however, and the Court does not find that either party is required to deplete his/her assets to pay child support for the benefit of the minor child as set forth below.

Before the trial court, Father's argument regarding the parties' estates acknowledged that the parties' estates were approximately equal. Father argued that because of how their property was divided in equitable distribution, Mother received "liquid assets" and he got "nonliquid assets."[3]  Because Mother got "liquid assets[,]" Father argued "she can use that money to help pay for [the child's] expenses."  Father

---

[3] In setting child support, the trial court factored in only Father's income from employment; Father reported income of $2,460.67 monthly as investment income, in addition to his wages from American Airlines, but the trial court used only his wages to determine his ability to pay support.

contends the trial court was required to make detailed findings of the values of each

of the parties' investments and assets, although he does not explain what difference

these findings would make in the child support calculation. But the law does not

require these findings. *See generally Kelly v. Kelly*, 228 N.C. App. 600, 607–08, 747

S.E.2d 268, 276 (2013). North Carolina General Statute § 50-13.4(c) requires the

trial court to have "due regard" to the factors listed; it does not require detailed

evidentiary findings on the parties' assets and liabilities. *See id.*

Father's argument overlooks the importance of the ultimate findings of fact the

trial court made. The trial court need not make specific findings of each subsidiary

fact supporting its ultimate finding.

> There are two kinds of facts: Ultimate facts, and evidentiary facts. Ultimate facts are the final facts required to establish the plaintiff's cause of action or the defendant's defense; and evidentiary facts are those subsidiary facts required to prove the ultimate facts.
>
> . . . .
>
> Ultimate facts are those found in that vaguely defined area lying between evidential facts on the one side and conclusions of law on the other. In consequence, the line of demarcation between ultimate facts and legal conclusions is not easily drawn. An ultimate fact is the final resulting effect which is reached by processes of logical reasoning from the evidentiary facts. Whether a statement is an ultimate fact or a conclusion of law depends upon whether it is reached by natural

reasoning or by an application of fixed rules of law.

In summary, while Rule 52(a) does not require a recitation of the evidentiary and subsidiary facts required to prove the ultimate facts, it does require specific findings of the ultimate facts established by the evidence, admissions and stipulations which are determinative of the questions involved in the action and essential to support the conclusions of law reached.

. . . .

The purpose of the requirement that the court make findings of those specific facts which support its ultimate disposition of the case is to allow a reviewing court to determine from the record whether the judgment-and the legal conclusions which underlie it-represent a correct application of the law. The requirement for appropriately detailed findings is thus not a mere formality or a rule of empty ritual; it is designed instead to dispose of the issues raised by the pleadings and to allow the appellate courts to perform their proper function in the judicial system.

*Quick v. Quick*, 305 N.C. 446, 451–52, 290 S.E.2d 653, 657–58 (1982) (citations, quotation marks, and ellipses omitted).

Defendant faults the trial court's order for its brevity, stating:

In the present case, the Court has entered a bare bones three (3) page order, with insufficient evidence to support the findings of fact and conclusions of law, to

> support its denial of Mr. Kelly's Motion to Modify Alimony. The Court, after hearing three days of testimony involving valuable assets, the finances of a law firm, staggering debt and reviewing extensive financial records made a mere eighteen findings of fact, only twelve of which related to the evidence offered at trial.

> But brevity is not necessarily a bad thing; Cicero said that Brevity is the best recommendation of speech, not only in that of a senator, but too in that of an orator, or, we might add, in many instances, a judge. The trial court found the ultimate facts which were raised by the defendant's motion to modify, and where the evidence supports these findings, that is sufficient. The court is not required to find all facts supported by the evidence, but only sufficient material facts to support the judgment.

*Id.* at 607–08, 747 S.E.2d at 276 (citations, quotation marks, and brackets omitted).

As in *Kelly*, the trial court's brevity is not a bad thing. *See id.* at 608, 747 S.E.2d at 276. The trial court made two findings of fact which adequately address the estates of the parties: First, the trial court in finding 12 addressed the bonus of $156,000 received by Mother, which was divided equally between the parties; the trial court did not abuse its discretion in determining that it would not consider this portion of the estates of the parties in its child support determination. *See generally Hinshaw v. Kuntz*, 234 N.C. App. 502, 505, 760 S.E.2d 296, 299 (2014) (noting that our standard of review in child support cases is abuse of discretion). As to the other evidence regarding the parties' estates, the trial court made Finding of Fact 14, noting that both parties' estates were approximately the same, neither party was taking

distributions from their investments, and neither would be required to deplete his or

her assets to support the child.

Father also relies on *Loosvelt v. Brown*, 235 N.C. App. 88, 760 S.E.2d 351

(2014), in making his first argument, but this reliance is misplaced. In *Loosvelt*, the

trial court made *no* finding of fact as to the father's income or estate:

> There is no finding of fact as to plaintiff's actual income, only that it is "substantial." We can infer that "substantial" here means more than $24,409.66 but we cannot, determine what the trial court found plaintiff's income to be. Furthermore, the trial court found that although plaintiff claims to earn $24,409.66 on average per month, he actually spends an average of $88,617.80 per month. Here, the trial court clearly assumed that the plaintiff's income is quite significantly more than $25,000 per month, but we have no way of knowing what number the trial court had in mind.

*Id.* at 103, 760 S.E.2d at 360 (brackets and footnote omitted). The trial court in

*Loosvelt* also failed to make findings as to the father's estate, other than in the context

of his expenses:

> In addition, even though the trial court's order contained some findings as to the estates, N.C. Gen. Stat. § 50–13.4(c), of the parties, particularly plaintiff, it did not make any findings which would permit consideration of plaintiff's estate as supporting his ability to pay child support; rather, the findings of fact addressed only the expenses plaintiff has incurred. For example, the trial court found that "Plaintiff/Father owns and pays for two (2) luxury residences in Los Angeles, California at a cost of approximately $12,000.00 per month." Having a large house payment does not necessarily equate to having a substantial estate; it can mean just the opposite. The trial

> court did not find the value of these "luxury residences," whether plaintiff's indebtedness on these residences equals or exceeds their values, or any other facts regarding the net value of plaintiff's estate.

*Id.* at 104, 760 S.E.2d at 361 (brackets omitted). The circumstances of this case bear no relevant resemblance to *Loosvelt* as the trial court made detailed findings regarding the parties' incomes and expenses and made an ultimate finding of fact regarding its consideration of the estates of the parties. *Contrast id.*, 235 N.C. App. 88, 760 S.E.2d 351.

In summary, the trial court properly considered the evidence and made sufficient findings of fact showing "due regard" to the estates of the parties. Further, the trial court did not abuse its discretion by determining that it would not base the child support calculation on the estates of the parties because they were essentially equal and neither party would be required to deplete his or her accounts and properties to support the child. *See generally Hinshaw*, 234 N.C. App. at 505, 760 S.E.2d at 299 ("In reviewing child support orders, our review is limited to a determination whether the trial court abused its discretion. Under this standard of review, the trial court's ruling will be overturned only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." (citation and quotation marks omitted)).

B.     Conditions and Accustomed Standard of Living

Father also argues "[t]he trial court failed to make any findings or conclusions regarding the accustomed standard of living of the minor child or the parties" and compares his case to *Zurosky v. Shaffer*, 236 N.C. App. 219, 763 S.E.2d 755 (2014). *Zurosky* involved an appeal from an extensive order addressing an extraordinarily complex case with claims of equitable distribution, alimony, and child support. *See id.* Father argues, "[u]nlike the extensive findings of fact made by the Trial Court in *Zurosky v Shaffer*, *supra*, the Trial Court in this matter made no findings regarding the child's 'health, activities, educational needs, travel needs, entertainment, work schedules, living arrangements, and other household expenses.'" In *Zurosky*, the "extensive findings of fact" were necessary to address the specific issues and arguments raised by the parties in that case, but there is no requirement that every non-guideline child support order include such extensive detail; all that is required is that the findings of fact address the factors noted by North Carolina General Statute § 50-13.4 to the extent evidence is offered on each factor, particularly those factors in dispute. *See generally* N.C. Gen. Stat. § 50-13.4 (2017).

Mother notes that as to the child "[t]here was no evidence presented at trial by either party regarding the estate or earnings of the minor child, but the child's accustomed standard of living was reflected in the expenses incurred by each party for the benefit of the child, as set out in each party's financial affidavit." "The affidavits were competent evidence in which the trial court was allowed to rely on in

determining the cost of raising the parties' children." *Row v. Row*, 185 N.C. App. 450, 460, 650 S.E.2d 1, 7 (2007). Before the trial court, Father did not make an argument regarding any dispute about the child's standard of living; there was no claim of excessive spending or of failure to provide for the child by either party. Findings 17 and 18 address the needs of the minor child based upon the financial affidavits and testimony, and the trial court noted the specific items it excluded from the expenses it determined to be reasonable. Based upon the evidence and record, the trial court's findings demonstrate that it took "due regard" of the conditions and accustomed standard of living of the child and parents. *See Cohen v. Cohen*, 100 N.C. App. 334, 339-40, 396 S.E.2d 344, 347–48 (1990) ("In a child support matter, the trial judge must make written findings of fact that demonstrate he gave due regard to the estates, earnings and conditions of each party. G.S. § 50–13.4(c). . . . Defendant argues that the trial court's refusal to specify the value of plaintiff's estate was error. We disagree. A trial judge must make conclusions of law based on factual findings specific enough to show the appellate courts that the judge took due regard of the parties' estates. The findings referred to above demonstrate the requisite specificity required of a trial judge in a matter such as this despite his understandable reluctance to place an exact dollar figure on plaintiff's estate. Defendant's assignment of error is overruled." (citations, quotation marks, ellipses, and brackets omitted)).

There is no requirement the trial court's findings use "magic words" such as "estates" or "accustomed standard of living" where the findings demonstrate that it did consider the evidence as to these factors in setting the child support obligation. *See generally id.* Father has demonstrated no abuse of discretion in the trial court's consideration of the conditions or accustomed standard of living of the parties or child. *See generally Hinshaw*, 234 N.C. App. at 505, 760 S.E.2d at 299.

## IV. Expenses for Child

Father's next argument contends the trial court erred by failing to consider expenses he incurred for the minor child during his secondary custodial time.[4] Specifically, Father argues that the trial court erred by not including as part of the child's total monthly individual expenses amounts he claimed for the child on his financial affidavit, in addition to the expenses incurred by Mother. Father argues that since the trial court set child support based upon the *pro rata* responsibility of each party for the child's expenses based upon their incomes, all of the child's

---

[4] Father's cited cases simply do not apply here. *See generally Jones v. Jones*, 52 N.C. App. 104, 278 S.E.2d 260 (1981); *Goodson v. Goodson*, 32 N.C. App. 76, 231 S.E.2d 178 (1977), *superseded by statute as stated in Craig v. Craig*, 103 N.C. App. 615, 406 S.E.2d 656 (1991). *Jones,* relying on *Goodson* does not address *establishment* of a child support obligation but instead arise in the context of contempt proceedings, where the payor has requested "credit" against court-ordered child support for expenses of the children paid during visitation time. *See Jones*, 52 N.C. App. 104, 278 S.E.2d 260. And *Jones* and *Goodson* now have limited relevance even in the context of contempt proceedings, since they "were decided before N.C.G.S. § 50–13.10 became effective on 1 October 1987. Under this statute, if the supporting party is not disabled or incapacitated as provided by subsection (a)(2), a past due, vested child support payment is subject to divestment only as provided by law, and if, but only if, a written motion is filed, and due notice is given to all parties before the payment is due. N.C.G.S. § 50–13.10(a)(1) (1987)." *Craig v. Craig*, 103 N.C. App. at 619, 406 S.E.2d at 658 (citation, quotation marks, ellipses, and brackets omitted).

individual expenses should have been included, whether incurred by him or by Mother. Specifically, he addresses findings of facts 17 and 18:

> 17. Plaintiff incurs reasonable and necessary monthly expenses for the benefit of the minor child of $3,873 per month, calculated as follows:
> a.     $2,885, or 50% of the Household Expenses from Plaintiff's September 2017 Financial Affidavit (excluding 100% of "Furniture & Household Furnishings" and 100% of "Legal Fees / Divorce Expenses"); plus $988, or 100% of the "Part 2: Individual Expenses" for the minor child from Plaintiff's September 2017 Financial Affidavit.
>
> 18.     Defendant incurs reasonable and necessary monthly expenses for himself in the amount of $9,813 per month, calculated as follows:
> a.     $6,578, or 100% of the Household Expenses from Defendant's September 19, 2017 Amended Financial Affidavit; plus
> b. $3,235, or 100% of the "Part 2: Individual Expenses" for self from Defendants September 19, 2017 Financial Affidavit (excluding $3,000 of the $3,974 listed for "Professional Fees," which the Court estimates to be primarily related to this litigation and not an ongoing expense; and also excluding the $2,000 listed for "Retirement & Investment" that already was accounted for as a voluntary deduction from Defendant's gross income).

Father has not demonstrated any abuse of discretion in the trial court's calculations. Father's total fixed household expenses would be the same, whether a portion is attributed to the child or not, and in determining his ability to pay child support, the trial court gave Father credit for 100% of his expenses for both of his

- 18 -

residences as stated on his affidavit.[5] Furthermore, some of the "individual expenses" attributed to the child on Father's affidavit *were* included in the trial court's calculation. For example, Father's affidavit included the portions of dental, vision and life insurance premiums as attributed to the child and the trial court actually included the *total* deduction for these premiums, including portions for the child, from Father's gross income. Based upon Father's argument his child support obligation could actually be *higher* than the trial court ordered.

Father's trial testimony addressed the two largest individual expenses he incurred for the child. Father's affidavit included an expense of $505 per month for "[w]ork related child care expense[.]" But Father testified he did not actually incur work-related child care expenses. Father testified the $505 on his affidavit was based upon "the Preston Wood Country Club, the fees, and [the child's] camps," and Mother had "asked [him] to do that" but he did not use any child care when the child was with him in the summer.[6] Under these circumstances, where Father testified he did not use work-related day care and the permanent custody order awarded Father an

---

[5] In his testimony, Father corrected a few numbers on the affidavit, but those corrections are not relevant to the issues on appeal. Father corrected the amounts of Medicare taxes, life insurance premiums (which had been included in two places), and the amount of union dues. Father also testified that his household expenses were for two homes, as he had a home in Cary and a home in Wilmington.

[6] Father also received the Preston Wood Country Club membership under the parties' Separation Agreement.

average of eight overnights per month of visitation, the trial court did not abuse its discretion in excluding Father's alleged work-related child care expense from its child support calculations.[7] Father's affidavit also listed an uninsured dental and orthodontic expense for the child of $650 per month, but he testified this number was based upon a periodontal surgery which cost $7,785 in 2017, not an ongoing expense.

After omitting the expenses for the country club dues and orthodontic care, Father would be left with $827.55 per month in individual child expenses he contends the trial court should have included in its calculation. Using these numbers and based upon Father's argument on appeal, the child's total monthly individual expenses would have been $4700.55, and father's 65% share of these expenses would be $3,055.00 – resulting in a *higher* child support obligation than the trial court ordered. Had the trial court also included Father's income from investments, his share of the total income would have been higher also and thus the monthly child support obligation would be even higher.

Father makes additional arguments, all without citation of authority and without challenging any findings as unsupported by the evidence, regarding the

---

[7] Father's visitation schedule was based upon his work schedule, so he would not be working when the child is with him. Father argues that his visitation time will likely increase, as the permanent custody order appointed a parenting coordinator and stated an "ultimate goal" of Defendant having 40% of the overnights each month[.]" But on appeal, this Court can consider only the circumstances existing based upon the orders currently in effect, not the possibility of a different schedule in the future.

particular expenses included in the calculation of the child's expenses. But Father's arguments demonstrate no abuse of discretion by the trial court. The trial court could have calculated child support differently, resulting in either a higher or lower amount, but there is no abuse of discretion.[8] The trial court's findings clearly demonstrate how the child support was calculated and the findings are supported by the evidence.

## V. Finding of Father's Expenses

Father also argues the trial court erred by finding his reasonable and necessary monthly expenses as $9,813.00 per month. Father does not challenge the finding as unsupported by the evidence but again argues that the trial court should have attributed a portion of his household expenses to the child, based upon the expenses he incurs when the child his with him. Father contends that the trial court should be required "to determine a reasonable percentage" of his "Part One Household Expenses that are attributable to the minor child" based upon the amount of time he spends with Father. Father claims "[t]his would result in a reduction in the amount of Household Expenses that the Trial Court has found are [his] expenses,

---

[8] Before the trial court, Father's main argument regarding child support was that he should not have to pay *any*. Father testified, "I don't think I should pay anything in child support to Christi." Father made no argument regarding how the trial court should calculate child support; his counsel argued only that Mother is "able to support [the child] by herself[,]" and Father is "capable of supporting [the child] by -- when he's with him and continue to pay the Preston Wood Country Club Membership, can continue to provide -- or provide life insurance for [the child]. If your Honor is going to order some amount of child support, then we would ask you to consider the fact that she's got -- she's got money with which to help defray those costs[,]" referring to assets Mother received under the Property Settlement Agreement.

and a finding that the minor child's reasonable needs include a portion of those Household Expenses which [he] incurs for the minor child." Father's argument ignores that the trial court found his ability to pay child support based upon all of his expenses based upon his affidavit. A reduction of his individual expenses would increase his ability to pay; it would also increase the child's individual expenses. It is entirely unclear that such a change would decrease his child support obligation; it may even increase it. In any event, he has shown no abuse of discretion in the trial court's findings of his expenses or allocation of those expenses to him.

VI.    Finding as to "Worksheet A" Primary Custodial Schedule

Father also argues the trial court's findings that the child would reside primarily with Mother on a "Worksheet A" schedule "are inconsistent with the evidence presented to the Trial Court" and the amounts of time awarded in the Temporary Child Custody Order, Memorandum of Order, and Permanent Child Custody Order. Father's argument challenges findings of fact 8 and 9:

> 8.  The child has resided primarily with Plaintiff on a "Worksheet A" schedule since November 30, 2016.
>
> 9.    A Permanent Child Custody Order ("Custody Order") has been entered. Pursuant to that Custody Order, Plaintiff will continue to exercise "Worksheet A" primary custody of the minor child.

To be clear, Father does not contend the trial court used Worksheet A of the child support guidelines to calculate child support. There is no dispute the parties'

combined incomes fall above the child support guidelines. The trial court used the term "Worksheet A" simply as a shorthand way to describe the custodial schedule.[9] Nor does Father challenge these findings are unsupported by the evidence. Father argues instead that the trial court failed "to give 'due regard' to the significant custodial time" he was awarded in the custody order.

The Permanent Custody Order provides the child "shall reside primarily with Plaintiff. The minor child shall be with Defendant for eight (8) overnights per calendar month[.]" The custody order addresses details of the schedule. Since Father is an airline pilot with a complex work schedule and the conflict between the parties required appointment of a Parenting Coordinator, the order provides for the Parenting Coordinator to assist the parties in the details of the visitation schedule.[10] Father is correct that the order states an "ultimate goal" of more visitation time, but the child support order is properly based upon the actual custodial schedule stated in the permanent custody order. Father's argument is without merit.

VII.    Child Support Arrears

---

[9] Under Worksheet A, the parent with secondary custody or visitation has the child fewer than 123 overnights per year. Eight overnights per month equals 96 overnights per year.

[10] As evidenced by the appointment of a Parenting Coordinator, this case has been a "high conflict" case as defined by North Carolina General Statute § 50-90. The permanent custody order includes many findings regarding Father's intense and openly expressed "anger about the separation to the minor child" and conflicts with both Mother and the child.

Last, Father argues the trial court erred by basing his child support arrears based upon the same calculations as it did for determining his prospective child support obligation.[11] Father was ordered to pay $52,659 in arrearages from 1 December 2016, to 30 September 2018. Father contends the trial court erred by failing to consider the parties' 2016 incomes in determining the child support arrearage, since the arrearages encompassed a portion of 2016.

Based upon Husband's argument, the only potential basis for any difference in the monthly child support calculation over this period is the parties' respective incomes. "Child support obligations are ordinarily determined by a party's actual income at the time the order is made or modified." *Sharpe v. Nobles*, 127 N.C. App. 705, 708, 493 S.E.2d 288, 290 (1997). Mother concedes that

> Even if Defendant's argument is correct – that the trial court should have calculated his arrears for 2016 based upon the parties' 2016 income – then only one month of arrears was calculated incorrectly by the trial court (i.e., for the month of December 2016), resulting in an overpayment by Defendant of $736 for that month. The remaining arrears, however, accrued during calendar year 2017 and continuing after the date of trial through the date of entry of the Permanent Child Support Order, so that the trial court properly calculated child support between the parties for that period using their respective gross incomes for calendar year 2017.

---

[11] Father also contests the ultimate amount he was ordered to pay as prospective child support, but this argument is based on the issues already addressed.

The rest of the child support arrears accrued after 2016, and Mother's income as of the date of trial as found by the trial court is supported by the evidence.[12]

A miscalculation of $736.00 for the month of December 2016 does not require reversal and remand to the trial court. $736.00 is less than 2% of the total arrears of $52,659.00. The parties would likely each incur more than $736.00 in attorney fees in a remand for the trial court to make this small change to the arrears ordered; this *de minimis* error does not warrant reversal. *See generally Cohoon v. Cooper*, 186 N.C. 26, 28, 118 S.E. 834, 835 (1923) ("Even if the difference of 95 cents (as to award of $663.96) if award if had been against the defendant, the time of the court, both below and here, costs too much to the public to debate that matter, *De minimis non curat lex.*"); *see also Comstock v. Comstock*, 240 N.C. App. 304, 313, 771 S.E.2d 602, 609 (2015) ("The $1,675.05 value is 0.6% of the adjusted value of the marital estate, which constitutes a *de minimis* error. As such, the trial court's erroneous calculation does not warrant reversal.").

VIII. Conclusion

The trial court's findings of fact and conclusions of law demonstrate "due regard" to the factors required by North Carolina General Statute § 50-13.4(c), and

---

[12] The trial was in October 2017, although the child support order was entered on 21 September 2018. The evidence in the record and upon which the trial court based the child support order was for 2016 and 2017. Father does not argue he was prejudiced by any delay in entry of the order.

the trial court did not abuse its discretion in the calculation of the child support obligation.  We therefore affirm the order.

AFFIRMED.

Chief Judge MCGEE concurs.

Judge MURPHY concurs in part and dissents in part.

No. COA19-145 – Kleoudis v. Kleoudis

MURPHY, Judge, concurring in part and dissenting in part.

In cases where the parents earn more than $25,000.00 per month, the trial court must determine what amount of support is necessary to meet the reasonable needs of the child based on the individual facts of the case. The trial court must give due regard to the estates, earnings, conditions, and accustomed standard of living of the parties and the child in order to reach such a determination. Where the trial court fails to consider even one of those factors in entering a child support order, the order amounts to an abuse of discretion and must be vacated. Here, the trial court failed to consider the respective estates of the parties in reaching its conclusion as to the amount of child support necessary to meet the needs of the minor child, and the child support order must be vacated in part and remanded. The remainder of the trial court's order in this matter should be affirmed. I respectfully dissent in part.

## BACKGROUND

Defendant-Appellant Demetrios Kleoudis ("Father") challenges the trial court's *Permanent Child Support Order* entered 21 September 2018 ("the Support Order"). The Plaintiff-Appellee in this matter, Christi Kleoudis ("Mother"), and Father were married in 1986 and two children were born of the nearly thirty-year marriage. The parties separated on 6 July 2015 and subsequently entered into a Separation Agreement and Property Settlement on 30 November 2016.

*MURPHY, J., concurring in part and dissenting in part.*

On 29 May 2018, the trial court entered a *Permanent Child Custody Order* as to Father and Mother's one minor child, Wilfred.[13]  This Custody Order provides Father with eight overnight visits per month and fourteen overnights during the Summer, and stipulates that Wilfred's Thanksgiving, Christmas, and Spring Break holidays shall be equally divided between the parties.  The trial court stated its ultimate goal was for Father to have 40% of the overnights with Wilfred, as was recommended by the Parenting Coordinator.  On 21 September 2018, the trial court entered the Support Order, ordering Father to pay $2,517.00 per month in child support beginning the following month and $52,659.00 in child support arrearage for December 2016 through September 2018.  Father timely appeals the Support Order on numerous grounds.

## ANALYSIS

### A. Standard of Review

"Child support orders entered by a trial court are accorded substantial deference by appellate courts and [appellate] review is limited to a determination of whether there was a clear abuse of discretion." *Leary v. Leary*, 152 N.C. App. 438, 441, 567 S.E.2d 834, 837 (2002).  The trial court must "make sufficient findings of fact and conclusions of law to allow the reviewing court to determine whether a judgment, and the legal conclusions that underlie it, represent a correct application of the law."

---

[13] We use a pseudonym throughout this opinion to protect the juvenile's identity and for ease of reading.

*Spicer v. Spicer*, 168 N.C. App. 283, 287, 607 S.E.2d 678, 682 (2005).  We will only overturn the trial court's ruling and remand for a new child support order where the challenging party can show that the ruling "was so arbitrary that it could not have been the result of a reasoned decision."  *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).

## B. Father's Child Support Obligation

Father's first argument on appeal is that the Support Order must be vacated and remanded because "the Trial Court failed to make appropriate findings and conclusions as to the accustomed standard of living of the parties and the minor child, the reasonable needs of the minor child, or the estates of the parties[.]"  In contrast, Mother offers:

> The trial court may not have used the specific terms "estates" or "accustomed standard of living" in its Permanent Child Support Order but there can be no genuine dispute that the trial court properly considered the accustomed standard of living of the child and each party in making the detailed calculations set out in Findings of Fact 16 through 23.

The record demonstrates that the trial court failed to consider the parties' estates, and therefore abused its discretion in reaching its conclusion regarding the reasonable needs of the child.

Our child support statute provides that:

> Payments ordered for the support of a minor child shall be in such amount as to meet the reasonable needs of the child for health, education, and maintenance, having due regard

> to the estates, earnings, conditions, accustomed standard of living of the child and the parties, . . . and other facts of the particular case.

N.C.G.S. § 50-13.4(c) (2019). Where, as here, the parents combined income is greater than $25,000.00 per month, the Child Support Guidelines are inapplicable and the trial court must instead make a case-specific determination giving "due regard" to the reasonable needs of the child and the parents' respective ability to pay. *Meehan v. Lawrance*, 166 N.C. App. 369, 383-84, 602 S.E.2d 21, 30 (2004) (describing the inapplicability of the Child Support Guidelines in "High Combined Income" cases).

As both parties correctly note in their briefs, the trial court did not use the specific terms "estates" or "accustomed standard of living" in reaching its conclusions regarding child support. Our caselaw does not allow us to conclude that the trial court's consideration of the parties' estates may be implied from its ultimate decision in this case; likewise, we cannot conclude the trial court complied with its statutory mandate to do so.

> The purpose of the requirement that the court make findings of those specific facts which support its ultimate disposition of the case is to allow a reviewing court to determine from the record whether the judgment—and the legal conclusions which underlie it—represent a correct application of the law. The requirement for appropriately detailed findings is thus not a mere formality or a rule of empty ritual; it is designed instead to dispose of the issues raised by the pleadings and to allow the appellate courts to perform their proper function in the judicial system.

*Coble v. Coble*, 300 N.C. 708, 712, 268 S.E.2d 185, 189 (1980) (internal quotation marks and citation omitted). It is well-established that the trial court's conclusions regarding the reasonable needs of the child and the parties' relative ability to pay

> must themselves be based upon factual *findings* specific enough to indicate to the appellate court that the judge below took due regard of the particular estates, earnings, conditions, and accustomed standard of living of both the child and the parents. It is a question of fairness and justice to all concerned. In the absence of such findings, this Court has no means of determining whether the order is adequately supported by competent evidence. It is not enough that there may be evidence in the record sufficient to support findings which *could have been made*.

*Id.* (emphasis added) (internal quotation marks, alterations, and citations omitted).

Although the reference appears in the section discussing "Conditions and Accustomed Standard of Living," the majority's opinion cites *Cohen v. Cohen*, 100 N.C. App. 334, 396 S.E.2d 344 (1990), to advance the recurring argument that the trial court's findings took "due regard" of the statutorily required factors. In *Cohen*, we addressed trial court findings regarding a party's total estate that, while lacking numerical specificity, still demonstrated the trial court took due regard of the statutory factors and satisfied the statutory requirements. *Cohen*, 100 N.C. App. at 339-40, 396 S.E.2d at 347–48.

However, the trial court in *Cohen* made significant detailed findings that are lacking in this case. In *Cohen*, while the trial court was "understandabl[y] reluctan[t] to place an exact dollar figure on [mother's] *estate*," the trial court made specific

5

findings concerning the dollar amounts of mother's current debts and the stock father transferred to mother "during the course of the trial." *Id.* at 340, 396 S.E.2d at 347–48 (emphasis added). Additionally, the trial court acknowledged "equitable distribution had not yet been made," and the stock liquidation necessary to determine the exact dollar amount of the estate rendered "any effort to determine the true net worth of [mother's] assets . . . speculative and inappropriate." *Id.* at 340, 396 S.E.2d at 347.

Unlike the trial court's specific dollar amount findings concerning important and current parts of the mother's estate in *Cohen*, the trial court in this case did not find an exact dollar amount concerning debts or marital investment income, interest, or dividends. Instead, the trial court *approximated* the "investment income, interest, and dividends resulting from marital investments" and made no findings regarding the parties' other assets or lack thereof. None of the trial court's factual findings quoted by the Majority constitute sufficiently specific factual findings showing due regard to the parties' estates. Findings 10, 13, 15, and 19 relate to the parties' income. Finding 11 references bonuses Mother received in prior years, without a specific consideration or dollar amount. Finding 12 notes a specific dollar amount of a bonus that Mother received in 2016; since the parties divided the 2016 bonus equally, the trial court did not consider the bonus as "[Mother's] income for purposes of calculating prospective child support." However, these funds are certainly a portion of their

6

"estates." Finding 14 approximates that the parties had "the same amount of investment income, interest, and dividends resulting from marital investments that were divided equally." Finding 14 is the closest reference to the parties' estates, but the trial court provided no dollar amount based on the evidence. Finding 16 addresses Mother's expenses. Findings 20-21 reference the parties' "net ability to pay child support for the benefit of the child." None of these findings are specific enough concerning the parties' estates to satisfy the statutory requirement.

As we reiterated in *Cohen*, "[a] trial judge must make conclusions of law based on factual findings *specific enough* to show the appellate courts that the judge took *due regard* of the parties' estates." *Cohen*, 100 N.C. App. at 340, 396 S.E.2d at 347-48 (first emphasis added, second emphasis in original). The trial court's findings fall far short of the statutory mandate.

Although the trial court's findings of fact comply with most of the statutory requirements, those findings are silent as to the estates of the parties. Without such findings, we cannot determine whether the Support Order is adequately supported by competent evidence and must vacate and remand for further consideration consistent herewith. As a result of such a remand, Father's arguments on appeal regarding the amount of child support he was ordered to pay (sections V and VI in his brief) would be moot and should be dismissed.

*MURPHY, J., concurring in part and dissenting in part.*

## C. Wilfred's Monthly Expenses

Father's next argument on appeal is that the trial court failed to consider the expenses he incurred for Wilfred during visitations and therefore abused its discretion by not giving Father a visitation credit, which is a credit to the obligor for expenses incurred for the benefit of the minor child during visitation. It is important to note that Father tries to avoid framing his argument on this issue as seeking a visitation credit, but that would be the ultimate effect of ruling for Appellant on this issue.

We afford trial courts wide latitude in deciding whether a visitation credit is appropriate. *Jones v. Jones*, 52 N.C. App. 104, 109, 278 S.E.2d 260, 264 (1981) ("The trial court has a wide discretion in deciding initially whether justice requires that a credit be given under the facts of each case and then in what amount the credit is to be awarded."); *Goodson v. Goodson*, 32 N.C. App. 76, 81, 231 S.E.2d 178, 182 (1977) (superseded by statute on other grounds) (holding that a visitation credit may be allowed "when equitable considerations exist which would create an injustice if credit were not allowed. Such a determination necessarily must depend upon the facts and circumstances in each case."). Our caselaw also dictates that visitation credits are permitted only where justice requires a credit for the obligor. *See Brinkley v. Brinkley*, 135 N.C. App. 608, 612, 522 S.E.2d 90, 93 (1999) (noting "the imposition of a credit is not an automatic right"). Generally, that might be the case where the non-

custodial parent has the child for more than a third of the year. *Cohen*, 100 N.C. App. at 346, 396 S.E.2d at 351 (1990).

Here, Father has custody of the minor child for eight overnights a month and on various holidays. The trial court's "ultimate goal" in setting the custody schedule was to provide Father with "40% of the overnights each month." In reviewing this issue for abuse of discretion, we must be satisfied that "[t]he trial court [has made] sufficient findings of fact and conclusions of law to allow the reviewing court to determine whether a judgment, and the legal conclusions that underlie it, represent a correct application of the law." *Spicer*, 168 N.C. App. at 287, 607 S.E.2d at 682. I am not satisfied Father has shown the trial court's decision on this issue is manifestly unsupported by reason, as it did not make any findings of fact or conclusions of law that allow us to review this issue. On remand, we must direct the trial court to make specific findings regarding this issue to clarify its decision. *See, e.g., Embler v. Embler*, 159 N.C. App. 186, 189, 582 S.E.2d 628, 630-31 (2003) (remanding "for further findings" without holding the trial court committed error or abused its discretion).

### D. Father's Monthly Expenses

Next, Father argues the trial court erroneously found, in Finding 18, that he incurs reasonable and necessary monthly expenses for himself in the amount of $9,813.00 per month. The trial court reached this finding by taking the amount

*MURPHY, J., concurring in part and dissenting in part.*

Father claimed as his reasonable and necessary monthly expenses in his financial affidavit ($14,812.68) less (1) $3,000.00 of the $3,974.00 in "Professional fees (CPA, Attorney Fees, etc.)" listed therein, which the trial court found was related primarily to this litigation rather than any ongoing monthly expense, and (2) the $2,000.00 listed under "Retirement/Investment[,]" which had already been accounted for as a voluntary deduction from Father's gross income. N.C. Child Support Guidelines, AOC-A-162, Rev. 8/15, 3 (2015) (defining "gross income" as "income before deductions for . . . retirement contributions, or other amounts withheld from income"). That left the court with the following equation:

$$\$14,812.68 - \$3,000.00 - \$2,000.00 = \$9,812.68.$$

Again, "our review is limited to a determination [of] whether the trial court abused its discretion. Under this standard of review, the trial court's ruling will be overturned only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *Spicer*, 168 N.C. App. at 287, 607 S.E.2d at 682 (internal citation omitted). Finding 18, regarding Father's reasonable and necessary monthly expenses, is not manifestly unsupported by reason. The trial court explained exactly how it reached that figure and its analysis is legally sound. Finding 18 is properly affirmed.

*MURPHY, J., concurring in part and dissenting in part.*

## E. Wilfred's Primary Residence

Finally, Father argues the trial court erred by finding Wilfred had resided primarily with Mother on a "Worksheet A" schedule since 30 November 2016 and that, pursuant to the Permanent Child Custody Order, Mother would continue to exercise "Worksheet A" primary custody of the minor child. Father's argument is purely semantic and incorrect; he contends the trial court's reference to "Worksheet A" indicates improper reliance on the Child Support Guidelines rather than the factors governing high income cases.

It is clear from the record the trial court's reference to "Worksheet A" in Finding 8 was shorthand for the fact that Wilfred resided primarily with Mother for at least 243 overnights per year. This reference does not, as Father alleges, reveal that the trial court was improperly influenced by the guidelines instead of the factors for high income cases. *Meehan*, 166 N.C. App. at 383, 602 S.E.2d at 30 (stating the trial court's order for child support in a high-income case "must be based upon the interplay of the trial court's conclusions of law as to (1) the amount of support necessary to meet the reasonable needs of the child and (2) the relative ability of the parties to provide that amount"). This is apparent from the trial court's other Findings of Fact and Conclusions of Law, all of which are appropriate for a high-income case rather than a traditional child support matter governed by the guidelines and calculated pursuant to Worksheet A. The trial court's use of the term "Worksheet

*MURPHY, J., concurring in part and dissenting in part.*

A" custody in Finding 8 was imprecise but, despite Father's argument to the contrary, its use of that term is not indicative of an abuse of discretion.

## **CONCLUSION**

The trial court failed to consider the parties' estates in reaching its conclusion regarding Father's child support payments. Such a finding is required, and we must vacate that portion of the trial court's order and remand for further consideration. We should also direct the trial court to reconsider its findings and conclusions regarding a potential visitation credit for Father. In all other regards, the trial court's order should be affirmed. For these reasons, I respectfully concur in part and dissent in part.