IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-145

 Filed: 21 April 2020

Wake County, No. 16 CVD 6098

CHRISTI SEAL KLEOUDIS, Plaintiff,

 v.

DEMETRIOS BASIL KLEOUDIS, Defendant.

 Appeal by defendant from order entered 21 September 2018 by Judge Michael

J. Denning in District Court, Wake County. Heard in the Court of Appeals 20 August

2019.

 Jackson Family Law, by Jill Schnabel Jackson, for plaintiff-appellee.

 Nicholls & Crampton, PA, by Nicholas J. Dombalis, II, for defendant-appellant.

 STROUD, Judge.

 Defendant-father appeals the trial court’s permanent child support order.

Because the trial court made sufficient findings of fact to support its determination

of defendant-father’s child support obligation, we affirm.

 I. Background

 On 7 July 2016, plaintiff-mother filed a verified amended complaint against

defendant-father for equitable distribution, permanent child support, and absolute

divorce. The parties have two children, one of whom reached the age of majority
 KLEOUDIS V. KLEOUDIS

 Opinion of the Court

before the custody claim was filed, and a son, Neal, who was born in 2004.1 On 8

August 2016, Father filed an amended answer to the amended complaint and

counterclaimed for custody and equitable distribution. On 16 September 2016, a

judgment of divorce was entered, and, on 24 October 2016, the trial court entered an

interim distribution order. On 25 October 2016, the trial court entered a temporary

child custody order granting the parties joint legal custody. The temporary custody

order provided that Neal would reside primarily with Mother during the school year

and set out a detailed schedule for physical custody for weekends, summers, and

holidays. On 9 November 2017, the trial court entered an Order Appointing

Parenting Coordinator based upon its finding that this “action is a high-conflict case”

and the appointment of a parenting coordinator would be in the child’s best interest.

The order specifically authorized the parenting coordinator to “adjust Defendant’s

visitation (both the regular schedule and the holiday/special time schedule) to

accommodate Defendant’s flight schedule,”2 which would be set out in more detail in

the permanent custody order.

 On 23 October 2017, the trial court heard the parties’ claims for permanent

child custody and child support. On 19 January 2018, the trial court entered a

Memorandum of Judgment/Order setting out “custodial provisions to be followed by

1 We have used a pseudonym to protect the identity of the minor child.

2 Father is a commercial airline pilot.

 -2-
 KLEOUDIS V. KLEOUDIS

 Opinion of the Court

the parties until such time as entry of a permanent custody order” and noting that

the terms were “rendered to the parties at the close of the evidence at their trial on

permanent custody.” This custodial schedule gave Mother primary physical custody

and Father eight overnights per calendar month, to be exercised based upon Father’s

availability due to his work schedule. Father was required to provide a copy of his

work schedule and overnight visitation dates each month to Mother and the

parenting coordinator. On 29 May 2018, the trial court entered the permanent

custody order, which set out essentially the same custodial schedule as in the

Memorandum. On 21 September 2018, a permanent child support order was entered.

Defendant appeals only the child support order.

 II. Standard of Review

 The trial court found the parties’ combined monthly adjusted gross income was

more than $25,000 so the trial court did not use the Child Support Guidelines to

calculate Father’s child support obligation. Where the parties’ incomes are above the

Guidelines, the trial court must set child support “in such amount as to meet the

reasonable needs of the child for health, education, and maintenance, having due

regard to the estates, earnings, conditions, accustomed standard of living of the child

and the parties, the child care and homemaker contributions of each party, and other

facts of the particular case.” N.C. Gen. Stat. § 50-13.4 (2017).

 -3-
 KLEOUDIS V. KLEOUDIS

 Opinion of the Court

 “Child support orders entered by a trial court are accorded substantial

deference by appellate courts and our review is limited to a determination of whether

there was a clear abuse of discretion.” Leary v. Leary, 152 N.C. App. 438, 441, 567

S.E.2d 834, 837 (2002). Where the child support guidelines do not apply, the trial

court must determine “child support on a case-by-case basis” and “the order must be

based upon the interplay of the trial court’s conclusions of law as to (1) the amount of

support necessary to meet the reasonable needs of the child and (2) the relative ability

of the parties to provide that amount.” Zaliagiris v. Zaliagiris, 164 N.C. App. 602,

610, 596 S.E.2d 285, 291 (2004) (citations and quotation marks omitted).

 In determining the relative ability of the parties to pay
 child support, the trial court must hear evidence and make
 findings of fact on the parents’ incomes, estates and
 present reasonable expenses. Although the trial court is
 granted considerable discretion in its consideration of the
 factors contained in N.C. Gen. Stat. § 50–13.4(c), the trial
 court’s finding in this regard must be supported by
 competent evidence in the record and be specific enough to
 enable this Court to make a determination that the trial
 court took due regard of the particular estates, earnings,
 conditions, and accustomed standard of living” of both the
 child and the parents.

Id. (citations, quotation marks, ellipses, and brackets omitted).

III. Findings of Fact on Estates, Conditions, and Accustomed Standard of Living

 Father first challenges several findings of fact and conclusions of law

particularly “as to the estates, conditions, [and] accustomed standard of living of the

child and the parties[,]” (original in all caps), but rather than challenging these

 -4-
 KLEOUDIS V. KLEOUDIS

 Opinion of the Court

findings of fact as unsupported by the evidence, he argues the trial court should have

made different findings based upon the evidence or failed to make additional

necessary findings of fact. However, “[u]nchallenged findings of fact are binding on

appeal.” See Peters v. Pennington, 210 N.C. App. 1, 13, 707 S.E.2d 724, 733 (2011).

The binding findings first note that the parties entered into a Separation Agreement

and Property Settlement, which is part of the record, resolving all claims of child

support up to 30 November 2016. As to specific findings of income and expenses, the

trial court found:

 10. Plaintiff is employed full-time as a statistician
 with Parexel. Plaintiff’s current gross income from
 employment is $15,781 per month. After mandatory
 deductions (federal & state taxes, Social Security,
 Medicare) of $5,818 per month and voluntary deductions
 (health, dental & vision insurance, life insurance,
 disability insurance, medical spending account, and
 retirement) of $2,018 per month, Plaintiff's net after-tax
 income from employment is $8,035 per month.

 11. In prior years, Plaintiff has received a bonus
 from Parexel that was tied to company performance, but
 Plaintiff received notification prior to the date of trial that
 no bonus will be paid in 2017.

 12. Plaintiff received a substantial bonus in 2016
 that resulted from work she had performed at
 GlaxoSmithKline some years prior to the date of
 separation. This bonus of $156,000 was divided equally
 between the parties in their equitable distribution
 settlement and is not considered by the Court as part of
 Plaintiff’s income for purposes of calculating prospective
 child support.

 -5-
 KLEOUDIS V. KLEOUDIS

 Opinion of the Court

 13. Defendant is employed full-time as a
commercial airline pilot with American Airlines.
Defendant’s current gross income from employment is
$28,917 per month. After mandatory deductions (federal
& state taxes, Social Security, Medicare, APA union dues)
of $10,973 per month and voluntary deductions (health &
dental insurance, life insurance, retirement) of $2,215 per
month, Defendant’s net after-tax income from employment
is $15,729 per month.

 14. Both parties report approximately the same
amount of investment income, interest, and dividends
resulting from marital investments that were divided
equally between the parties as part of their property
settlement. Neither party actually takes distributions or
withdrawals from these investments, however, and the
Court does not find that either party is required to deplete
his/her assets to pay child support for the benefit of the
minor child as set forth below.

 15. The parties’ combined gross income exceeds
$300,000 per year, so that the parties are “off the
Guidelines” for purposes of calculating their respective
support obligations for the benefit of the minor child.

 16. Plaintiff incurs reasonable and necessary
monthly expenses for herself in the amount of $4,107 per
month, calculated as follows:
 a. $2,885, or 50% of the Household
 Expenses from Plaintiff’s September 2017 Financial
 Affidavit (excluding 100% of “Furniture &
 Household Furnishings” and 100% of “Legal Fees /
 Divorce Expenses”); plus
 b. $1,222, or 100% of the “Part 2:
 Individual Expenses” for self from Plaintiff's
 September 2017 Financial Affidavit.

 ....

 19. Defendant earns 65% and Plaintiff earns 35%

 -6-
 KLEOUDIS V. KLEOUDIS

 Opinion of the Court

 of the parties’ total gross income of $44,698 per month. It
 is reasonable and appropriate for each party to pay a pro
 rata share of the child’s reasonable and necessary monthly
 expenses in accordance with his/her pro rata share of their
 comparative gross income.

 20. Defendant’s net ability to pay child support
 for the benefit of the child is $5,916 per month (i.e., $15,729
 net income- $9,813 expenses). Defendant has the ability to
 pay his 65% share of the child’s reasonable and necessary
 monthly expenses of $2,517 per month (i.e., $3,873 x 65%).

 21. Plaintiff’s net ability to pay child support for
 the benefit of the child is $3,928 per month (i.e., $8,035 net
 income - $4,107 for “self” expenses). Plaintiff has the ability
 to pay her 35% share. of the child's reasonable and
 necessary monthly, expenses of $1,356 per month (i.e.,
 $3,873 x35%).

We will first address Father’s argument as to the trial court’s findings regarding the

parties’ estates.

 A. Estates

 Father first contends the trial court failed to make sufficient findings of fact

regarding the parties’ “estates:”

 [t]here are no findings made by the Trial Court
 concerning the value of the parties’ assets, including any
 separate assets that they may own that would not have
 been included in the marital assets that were distributed
 between them. No findings were made regarding the value
 of each parties’ investment accounts, bank accounts, real
 estate retirement accounts or other assets owned by them,
 all of which would bear on the relative ability of the parties
 to pay support and the accustomed standard of living of the
 minor child and the parties.
 It is not enough that there may be evidence in the

 -7-
 KLEOUDIS V. KLEOUDIS

 Opinion of the Court

 record sufficient to support findings which could have been
 made.

Thus, Father acknowledges that substantial evidence was presented regarding the

estates of the parties but contends the findings of fact were not sufficient because the

trial court did not make detailed findings as to the values of various assets and

accounts.

 North Carolina General Statute § 50-13.4(c) sets the standard for child support

in cases not covered by the North Carolina Child Support Guidelines:

 Payments ordered for the support of a minor child shall be
 in such amount as to meet the reasonable needs of the child
 for health, education, and maintenance, having due regard
 to the estates, earnings, conditions, accustomed standard
 of living of the child and the parties, the child care and
 homemaker contributions of each party, and other facts of
 the particular case.

N.C. Gen. Stat. § 50-13.4(c) (2017).

 The trial court noted its consideration of the estates of the parties and found

that neither party would have to deplete his or her estate to support the child. Giving

“due regard” to the estates of the parties does not require detailed findings as to the

value of each individual asset but requires only that the trial court consider the

evidence and make sufficient findings addressing its determination regarding the

estates to allow appellate review. The trial court made several findings of fact

regarding the parties’ estates, and Father does not challenge those findings as

unsupported by the evidence.

 -8-
 KLEOUDIS V. KLEOUDIS

 Opinion of the Court

 11. In prior years, Plaintiff has received a bonus
 from Parexel that was tied to company performance, but
 Plaintiff received notification prior to the date of trial that
 no bonus will be paid in 2017.

 12. Plaintiff received a substantial bonus in 2016
 that resulted from work she had performed at
 GlaxoSmithKline some years prior to the date of
 separation. This bonus of $156,000 was divided equally
 between the parties in their equitable distribution
 settlement and is not considered by the Court as part of
 Plaintiff's income for purposes of calculating prospective
 child support.

 ....

 14. Both parties report approximately the same
 amount of investment income, interest, and dividends
 resulting from marital investments that were divided
 equally between the parties as part of their property
 settlement. Neither party actually takes distributions or
 withdrawals from these investments, however, and the
 Court does not find that either party is required to deplete
 his/her assets to pay child support for the benefit of the
 minor child as set forth below.

 Before the trial court, Father’s argument regarding the parties’ estates

acknowledged that the parties’ estates were approximately equal. Father argued that

because of how their property was divided in equitable distribution, Mother received

“liquid assets” and he got “nonliquid assets.”3 Because Mother got “liquid assets[,]”

Father argued “she can use that money to help pay for [the child’s] expenses.” Father

3 In setting child support, the trial court factored in only Father’s income from employment; Father
reported income of $2,460.67 monthly as investment income, in addition to his wages from American
Airlines, but the trial court used only his wages to determine his ability to pay support.

 -9-
 KLEOUDIS V. KLEOUDIS

 Opinion of the Court

contends the trial court was required to make detailed findings of the values of each

of the parties’ investments and assets, although he does not explain what difference

these findings would make in the child support calculation. But the law does not

require these findings. See generally Kelly v. Kelly, 228 N.C. App. 600, 607–08, 747

S.E.2d 268, 276 (2013). North Carolina General Statute § 50-13.4(c) requires the

trial court to have “due regard” to the factors listed; it does not require detailed

evidentiary findings on the parties’ assets and liabilities. See id.

 Father’s argument overlooks the importance of the ultimate findings of fact the

trial court made. The trial court need not make specific findings of each subsidiary

fact supporting its ultimate finding.

 There are two kinds of facts: Ultimate facts,
 and evidentiary facts. Ultimate facts are the
 final facts required to establish the plaintiff’s
 cause of action or the defendant’s defense; and
 evidentiary facts are those subsidiary facts
 required to prove the ultimate facts.

 ....

 Ultimate facts are those found in that vaguely
 defined area lying between evidential facts on
 the one side and conclusions of law on the
 other. In consequence, the line of demarcation
 between ultimate facts and legal conclusions
 is not easily drawn. An ultimate fact is the
 final resulting effect which is reached by
 processes of logical reasoning from the
 evidentiary facts. Whether a statement is an
 ultimate fact or a conclusion of law depends
 upon whether it is reached by natural

 - 10 -
 KLEOUDIS V. KLEOUDIS

 Opinion of the Court

 reasoning or by an application of fixed rules of
 law.

 In summary, while Rule 52(a) does not
 require a recitation of the evidentiary and
 subsidiary facts required to prove the
 ultimate facts, it does require specific findings
 of the ultimate facts established by the
 evidence, admissions and stipulations which
 are determinative of the questions involved in
 the action and essential to support the
 conclusions of law reached.

 ....

 The purpose of the requirement that the court
 make findings of those specific facts which
 support its ultimate disposition of the case is
 to allow a reviewing court to determine from
 the record whether the judgment-and the
 legal conclusions which underlie it-represent
 a correct application of the law. The
 requirement for appropriately detailed
 findings is thus not a mere formality or a rule
 of empty ritual; it is designed instead to
 dispose of the issues raised by the pleadings
 and to allow the appellate courts to perform
 their proper function in the judicial system.

Quick v. Quick, 305 N.C. 446, 451–52, 290 S.E.2d 653, 657–
58 (1982) (citations, quotation marks, and ellipses
omitted).

 Defendant faults the trial court’s order for its
brevity, stating:

 In the present case, the Court has entered a
 bare bones three (3) page order, with
 insufficient evidence to support
 the findings of fact and conclusions of law, to

 - 11 -
 KLEOUDIS V. KLEOUDIS

 Opinion of the Court

 support its denial of Mr. Kelly’s Motion to
 Modify Alimony. The Court, after hearing
 three days of testimony involving valuable
 assets, the finances of a law firm, staggering
 debt and reviewing extensive financial
 records made a mere eighteen findings of fact,
 only twelve of which related to the evidence
 offered at trial.

 But brevity is not necessarily a bad thing; Cicero said that
 Brevity is the best recommendation of speech, not only in
 that of a senator, but too in that of an orator, or, we might
 add, in many instances, a judge. The trial court found
 the ultimate facts which were raised by the defendant’s
 motion to modify, and where the evidence supports these
 findings, that is sufficient. The court is not required to find
 all facts supported by the evidence, but only sufficient
 material facts to support the judgment.

Id. at 607–08, 747 S.E.2d at 276 (citations, quotation marks, and brackets omitted).

 As in Kelly, the trial court’s brevity is not a bad thing. See id. at 608, 747

S.E.2d at 276. The trial court made two findings of fact which adequately address

the estates of the parties: First, the trial court in finding 12 addressed the bonus of

$156,000 received by Mother, which was divided equally between the parties; the trial

court did not abuse its discretion in determining that it would not consider this

portion of the estates of the parties in its child support determination. See generally

Hinshaw v. Kuntz, 234 N.C. App. 502, 505, 760 S.E.2d 296, 299 (2014) (noting that

our standard of review in child support cases is abuse of discretion). As to the other

evidence regarding the parties’ estates, the trial court made Finding of Fact 14, noting

that both parties’ estates were approximately the same, neither party was taking

 - 12 -
 KLEOUDIS V. KLEOUDIS

 Opinion of the Court

distributions from their investments, and neither would be required to deplete his or

her assets to support the child.

 Father also relies on Loosvelt v. Brown, 235 N.C. App. 88, 760 S.E.2d 351

(2014), in making his first argument, but this reliance is misplaced. In Loosvelt, the

trial court made no finding of fact as to the father’s income or estate:

 There is no finding of fact as to plaintiff’s actual income,
 only that it is “substantial.” We can infer that “substantial”
 here means more than $24,409.66 but we cannot,
 determine what the trial court found plaintiff's income to
 be. Furthermore, the trial court found that although
 plaintiff claims to earn $24,409.66 on average per month,
 he actually spends an average of $88,617.80 per month.
 Here, the trial court clearly assumed that the plaintiff’s
 income is quite significantly more than $25,000 per month,
 but we have no way of knowing what number the trial court
 had in mind.

Id. at 103, 760 S.E.2d at 360 (brackets and footnote omitted). The trial court in

Loosvelt also failed to make findings as to the father’s estate, other than in the context

of his expenses:

 In addition, even though the trial court’s order
 contained some findings as to the estates, N.C. Gen. Stat.
 § 50–13.4(c), of the parties, particularly plaintiff, it did not
 make any findings which would permit consideration of
 plaintiff’s estate as supporting his ability to pay child
 support; rather, the findings of fact addressed only the
 expenses plaintiff has incurred. For example, the trial
 court found that “Plaintiff/Father owns and pays for two (2)
 luxury residences in Los Angeles, California at a cost of
 approximately $12,000.00 per month.” Having a large
 house payment does not necessarily equate to having a
 substantial estate; it can mean just the opposite. The trial

 - 13 -
 KLEOUDIS V. KLEOUDIS

 Opinion of the Court

 court did not find the value of these “luxury residences,”
 whether plaintiff's indebtedness on these residences equals
 or exceeds their values, or any other facts regarding the net
 value of plaintiff's estate.

Id. at 104, 760 S.E.2d at 361 (brackets omitted). The circumstances of this case bear

no relevant resemblance to Loosvelt as the trial court made detailed findings

regarding the parties’ incomes and expenses and made an ultimate finding of fact

regarding its consideration of the estates of the parties. Contrast id., 235 N.C. App.

88, 760 S.E.2d 351.

 In summary, the trial court properly considered the evidence and made

sufficient findings of fact showing “due regard” to the estates of the parties. Further,

the trial court did not abuse its discretion by determining that it would not base the

child support calculation on the estates of the parties because they were essentially

equal and neither party would be required to deplete his or her accounts and

properties to support the child. See generally Hinshaw, 234 N.C. App. at 505, 760

S.E.2d at 299 (“In reviewing child support orders, our review is limited to a

determination whether the trial court abused its discretion. Under this standard of

review, the trial court’s ruling will be overturned only upon a showing that it was so

arbitrary that it could not have been the result of a reasoned decision.” (citation and

quotation marks omitted)).

B. Conditions and Accustomed Standard of Living

 - 14 -
 KLEOUDIS V. KLEOUDIS

 Opinion of the Court

 Father also argues “[t]he trial court failed to make any findings or conclusions

regarding the accustomed standard of living of the minor child or the parties” and

compares his case to Zurosky v. Shaffer, 236 N.C. App. 219, 763 S.E.2d 755 (2014).

Zurosky involved an appeal from an extensive order addressing an extraordinarily

complex case with claims of equitable distribution, alimony, and child support. See

id. Father argues, “[u]nlike the extensive findings of fact made by the Trial Court in

Zurosky v Shaffer, supra, the Trial Court in this matter made no findings regarding

the child’s ‘health, activities, educational needs, travel needs, entertainment, work

schedules, living arrangements, and other household expenses.’” In Zurosky, the

“extensive findings of fact” were necessary to address the specific issues and

arguments raised by the parties in that case, but there is no requirement that every

non-guideline child support order include such extensive detail; all that is required is

that the findings of fact address the factors noted by North Carolina General Statute

§ 50-13.4 to the extent evidence is offered on each factor, particularly those factors in

dispute. See generally N.C. Gen. Stat. § 50-13.4 (2017).

 Mother notes that as to the child “[t]here was no evidence presented at trial by

either party regarding the estate or earnings of the minor child, but the child’s

accustomed standard of living was reflected in the expenses incurred by each party

for the benefit of the child, as set out in each party’s financial affidavit.” “The

affidavits were competent evidence in which the trial court was allowed to rely on in

 - 15 -
 KLEOUDIS V. KLEOUDIS

 Opinion of the Court

determining the cost of raising the parties’ children.” Row v. Row, 185 N.C. App. 450,

460, 650 S.E.2d 1, 7 (2007). Before the trial court, Father did not make an argument

regarding any dispute about the child’s standard of living; there was no claim of

excessive spending or of failure to provide for the child by either party. Findings 17

and 18 address the needs of the minor child based upon the financial affidavits and

testimony, and the trial court noted the specific items it excluded from the expenses

it determined to be reasonable. Based upon the evidence and record, the trial court’s

findings demonstrate that it took “due regard” of the conditions and accustomed

standard of living of the child and parents. See Cohen v. Cohen, 100 N.C. App. 334,

339-40, 396 S.E.2d 344, 347–48 (1990) (“In a child support matter, the trial judge

must make written findings of fact that demonstrate he gave due regard to the

estates, earnings and conditions of each party. G.S. § 50–13.4(c). . . . Defendant

argues that the trial court’s refusal to specify the value of plaintiff's estate was error.

We disagree. A trial judge must make conclusions of law based on factual findings

specific enough to show the appellate courts that the judge took due regard of the

parties’ estates. The findings referred to above demonstrate the requisite specificity

required of a trial judge in a matter such as this despite his understandable

reluctance to place an exact dollar figure on plaintiff’s estate. Defendant’s

assignment of error is overruled.” (citations, quotation marks, ellipses, and brackets

omitted)).

 - 16 -
 KLEOUDIS V. KLEOUDIS

 Opinion of the Court

 There is no requirement the trial court’s findings use “magic words” such as

“estates” or “accustomed standard of living” where the findings demonstrate that it

did consider the evidence as to these factors in setting the child support obligation.

See generally id. Father has demonstrated no abuse of discretion in the trial court’s

consideration of the conditions or accustomed standard of living of the parties or child.

See generally Hinshaw, 234 N.C. App. at 505, 760 S.E.2d at 299.

 IV. Expenses for Child

 Father’s next argument contends the trial court erred by failing to consider

expenses he incurred for the minor child during his secondary custodial time.4

Specifically, Father argues that the trial court erred by not including as part of the

child’s total monthly individual expenses amounts he claimed for the child on his

financial affidavit, in addition to the expenses incurred by Mother. Father argues

that since the trial court set child support based upon the pro rata responsibility of

each party for the child’s expenses based upon their incomes, all of the child’s

4 Father’s cited cases simply do not apply here. See generally Jones v. Jones, 52 N.C. App. 104, 278
S.E.2d 260 (1981); Goodson v. Goodson, 32 N.C. App. 76, 231 S.E.2d 178 (1977), superseded by statute
as stated in Craig v. Craig, 103 N.C. App. 615, 406 S.E.2d 656 (1991). Jones, relying on Goodson does
not address establishment of a child support obligation but instead arise in the context of contempt
proceedings, where the payor has requested “credit” against court-ordered child support for expenses
of the children paid during visitation time. See Jones, 52 N.C. App. 104, 278 S.E.2d 260. And Jones
and Goodson now have limited relevance even in the context of contempt proceedings, since they “were
decided before N.C.G.S. § 50–13.10 became effective on 1 October 1987. Under this statute, if the
supporting party is not disabled or incapacitated as provided by subsection (a)(2), a past due, vested
child support payment is subject to divestment only as provided by law, and if, but only if, a written
motion is filed, and due notice is given to all parties before the payment is due. N.C.G.S. § 50–
13.10(a)(1) (1987).” Craig v. Craig, 103 N.C. App. at 619, 406 S.E.2d at 658 (citation, quotation marks,
ellipses, and brackets omitted).

 - 17 -
 KLEOUDIS V. KLEOUDIS

 Opinion of the Court

individual expenses should have been included, whether incurred by him or by

Mother. Specifically, he addresses findings of facts 17 and 18:

 17. Plaintiff incurs reasonable and necessary
 monthly expenses for the benefit of the minor child of
 $3,873 per month, calculated as follows:
 a. $2,885, or 50% of the Household Expenses
 from Plaintiff’s September 2017 Financial Affidavit
 (excluding 100% of “Furniture & Household Furnishings”
 and 100% of “Legal Fees / Divorce Expenses”); plus $988,
 or 100% of the “Part 2: Individual Expenses” for the minor
 child from Plaintiff's September 2017 Financial Affidavit.

 18. Defendant incurs reasonable and necessary
 monthly expenses for himself in the amount of $9,813 per
 month, calculated as follows:
 a. $6,578, or 100% of the Household Expenses
 from Defendant’s September 19, 2017 Amended Financial
 Affidavit; plus
 b. $3,235, or 100% of the “Part 2: Individual
 Expenses” for self from Defendants September 19, 2017
 Financial Affidavit (excluding $3,000 of the $3,974 listed
 for “Professional Fees,” which the Court estimates to be
 primarily related to this litigation and not an ongoing
 expense; and also excluding the $2,000 listed for
 “Retirement & Investment” that already was accounted for
 as a voluntary deduction from Defendant’s gross income).

 Father has not demonstrated any abuse of discretion in the trial court’s

calculations. Father’s total fixed household expenses would be the same, whether a

portion is attributed to the child or not, and in determining his ability to pay child

support, the trial court gave Father credit for 100% of his expenses for both of his

 - 18 -
 KLEOUDIS V. KLEOUDIS

 Opinion of the Court

residences as stated on his affidavit.5 Furthermore, some of the “individual expenses”

attributed to the child on Father’s affidavit were included in the trial court’s

calculation. For example, Father’s affidavit included the portions of dental, vision

and life insurance premiums as attributed to the child and the trial court actually

included the total deduction for these premiums, including portions for the child, from

Father’s gross income. Based upon Father’s argument his child support obligation

could actually be higher than the trial court ordered.

 Father’s trial testimony addressed the two largest individual expenses he

incurred for the child. Father’s affidavit included an expense of $505 per month for

“[w]ork related child care expense[.]” But Father testified he did not actually incur

work-related child care expenses. Father testified the $505 on his affidavit was based

upon “the Preston Wood Country Club, the fees, and [the child’s] camps,” and Mother

had “asked [him] to do that” but he did not use any child care when the child was

with him in the summer.6 Under these circumstances, where Father testified he did

not use work-related day care and the permanent custody order awarded Father an

5 In his testimony, Father corrected a few numbers on the affidavit, but those corrections are not
relevant to the issues on appeal. Father corrected the amounts of Medicare taxes, life insurance
premiums (which had been included in two places), and the amount of union dues. Father also testified
that his household expenses were for two homes, as he had a home in Cary and a home in Wilmington.

6Father also received the Preston Wood Country Club membership under the parties’ Separation
Agreement.

 - 19 -
 KLEOUDIS V. KLEOUDIS

 Opinion of the Court

average of eight overnights per month of visitation, the trial court did not abuse its

discretion in excluding Father’s alleged work-related child care expense from its child

support calculations.7 Father’s affidavit also listed an uninsured dental and

orthodontic expense for the child of $650 per month, but he testified this number was

based upon a periodontal surgery which cost $7,785 in 2017, not an ongoing expense.

 After omitting the expenses for the country club dues and orthodontic care,

Father would be left with $827.55 per month in individual child expenses he contends

the trial court should have included in its calculation. Using these numbers and

based upon Father’s argument on appeal, the child’s total monthly individual

expenses would have been $4700.55, and father’s 65% share of these expenses would

be $3,055.00 – resulting in a higher child support obligation than the trial court

ordered. Had the trial court also included Father’s income from investments, his

share of the total income would have been higher also and thus the monthly child

support obligation would be even higher.

 Father makes additional arguments, all without citation of authority and

without challenging any findings as unsupported by the evidence, regarding the

7Father’s visitation schedule was based upon his work schedule, so he would not be working when the
child is with him. Father argues that his visitation time will likely increase, as the permanent custody
order appointed a parenting coordinator and stated an “ultimate goal” of Defendant having 40% of the
overnights each month[.]” But on appeal, this Court can consider only the circumstances existing
based upon the orders currently in effect, not the possibility of a different schedule in the future.

 - 20 -
 KLEOUDIS V. KLEOUDIS

 Opinion of the Court

particular expenses included in the calculation of the child’s expenses. But Father’s

arguments demonstrate no abuse of discretion by the trial court. The trial court could

have calculated child support differently, resulting in either a higher or lower

amount, but there is no abuse of discretion.8 The trial court’s findings clearly

demonstrate how the child support was calculated and the findings are supported by

the evidence.

 V. Finding of Father’s Expenses

 Father also argues the trial court erred by finding his reasonable and

necessary monthly expenses as $9,813.00 per month. Father does not challenge the

finding as unsupported by the evidence but again argues that the trial court should

have attributed a portion of his household expenses to the child, based upon the

expenses he incurs when the child his with him. Father contends that the trial court

should be required “to determine a reasonable percentage” of his “Part One

Household Expenses that are attributable to the minor child” based upon the amount

of time he spends with Father. Father claims “[t]his would result in a reduction in

the amount of Household Expenses that the Trial Court has found are [his] expenses,

8 Before the trial court, Father’s main argument regarding child support was that he should not have
to pay any. Father testified, “I don’t think I should pay anything in child support to Christi.” Father
made no argument regarding how the trial court should calculate child support; his counsel argued
only that Mother is “able to support [the child] by herself[,]” and Father is “capable of supporting [the
child] by -- when he’s with him and continue to pay the Preston Wood Country Club Membership, can
continue to provide -- or provide life insurance for [the child]. If your Honor is going to order some
amount of child support, then we would ask you to consider the fact that she’s got -- she’s got money
with which to help defray those costs[,]” referring to assets Mother received under the Property
Settlement Agreement.

 - 21 -
 KLEOUDIS V. KLEOUDIS

 Opinion of the Court

and a finding that the minor child’s reasonable needs include a portion of those

Household Expenses which [he] incurs for the minor child.” Father’s argument

ignores that the trial court found his ability to pay child support based upon all of his

expenses based upon his affidavit. A reduction of his individual expenses would

increase his ability to pay; it would also increase the child’s individual expenses. It

is entirely unclear that such a change would decrease his child support obligation; it

may even increase it. In any event, he has shown no abuse of discretion in the trial

court’s findings of his expenses or allocation of those expenses to him.

 VI. Finding as to “Worksheet A” Primary Custodial Schedule

 Father also argues the trial court’s findings that the child would reside

primarily with Mother on a “Worksheet A” schedule “are inconsistent with the

evidence presented to the Trial Court” and the amounts of time awarded in the

Temporary Child Custody Order, Memorandum of Order, and Permanent Child

Custody Order. Father’s argument challenges findings of fact 8 and 9:

 8. The child has resided primarily with Plaintiff on
 a “Worksheet A” schedule since November 30, 2016.

 9. A Permanent Child Custody Order (“Custody
 Order”) has been entered. Pursuant to that Custody Order,
 Plaintiff will continue to exercise “Worksheet A” primary
 custody of the minor child.

 To be clear, Father does not contend the trial court used Worksheet A of the

child support guidelines to calculate child support. There is no dispute the parties’

 - 22 -
 KLEOUDIS V. KLEOUDIS

 Opinion of the Court

combined incomes fall above the child support guidelines. The trial court used the

term “Worksheet A” simply as a shorthand way to describe the custodial schedule.9

Nor does Father challenge these findings are unsupported by the evidence. Father

argues instead that the trial court failed “to give ‘due regard’ to the significant

custodial time” he was awarded in the custody order.

 The Permanent Custody Order provides the child “shall reside primarily with

Plaintiff. The minor child shall be with Defendant for eight (8) overnights per

calendar month[.]” The custody order addresses details of the schedule. Since Father

is an airline pilot with a complex work schedule and the conflict between the parties

required appointment of a Parenting Coordinator, the order provides for the

Parenting Coordinator to assist the parties in the details of the visitation schedule.10

Father is correct that the order states an “ultimate goal” of more visitation time, but

the child support order is properly based upon the actual custodial schedule stated in

the permanent custody order. Father’s argument is without merit.

 VII. Child Support Arrears

9Under Worksheet A, the parent with secondary custody or visitation has the child fewer than 123
overnights per year. Eight overnights per month equals 96 overnights per year.

10As evidenced by the appointment of a Parenting Coordinator, this case has been a “high conflict”
case as defined by North Carolina General Statute § 50-90. The permanent custody order includes
many findings regarding Father’s intense and openly expressed “anger about the separation to the
minor child” and conflicts with both Mother and the child.

 - 23 -
 KLEOUDIS V. KLEOUDIS

 Opinion of the Court

 Last, Father argues the trial court erred by basing his child support arrears

based upon the same calculations as it did for determining his prospective child

support obligation.11 Father was ordered to pay $52,659 in arrearages from 1

December 2016, to 30 September 2018. Father contends the trial court erred by

failing to consider the parties’ 2016 incomes in determining the child support

arrearage, since the arrearages encompassed a portion of 2016.

 Based upon Husband’s argument, the only potential basis for any difference in

the monthly child support calculation over this period is the parties’ respective

incomes. “Child support obligations are ordinarily determined by a party’s actual

income at the time the order is made or modified.” Sharpe v. Nobles, 127 N.C. App.

705, 708, 493 S.E.2d 288, 290 (1997). Mother concedes that

 Even if Defendant’s argument is correct – that the trial
 court should have calculated his arrears for 2016 based
 upon the parties’ 2016 income – then only one month of
 arrears was calculated incorrectly by the trial court (i.e.,
 for the month of December 2016), resulting in an
 overpayment by Defendant of $736 for that month. The
 remaining arrears, however, accrued during calendar year
 2017 and continuing after the date of trial through the date
 of entry of the Permanent Child Support Order, so that the
 trial court properly calculated child support between the
 parties for that period using their respective gross incomes
 for calendar year 2017.

11Father also contests the ultimate amount he was ordered to pay as prospective child support, but
this argument is based on the issues already addressed.

 - 24 -
 KLEOUDIS V. KLEOUDIS

 Opinion of the Court

The rest of the child support arrears accrued after 2016, and Mother’s income as of

the date of trial as found by the trial court is supported by the evidence. 12

 A miscalculation of $736.00 for the month of December 2016 does not require

reversal and remand to the trial court. $736.00 is less than 2% of the total arrears of

$52,659.00. The parties would likely each incur more than $736.00 in attorney fees

in a remand for the trial court to make this small change to the arrears ordered; this

de minimis error does not warrant reversal. See generally Cohoon v. Cooper, 186 N.C.

26, 28, 118 S.E. 834, 835 (1923) (“Even if the difference of 95 cents (as to award of

$663.96) if award if had been against the defendant, the time of the court, both below

and here, costs too much to the public to debate that matter, De minimis non curat

lex.”); see also Comstock v. Comstock, 240 N.C. App. 304, 313, 771 S.E.2d 602, 609

(2015) (“The $1,675.05 value is 0.6% of the adjusted value of the marital estate, which

constitutes a de minimis error. As such, the trial court’s erroneous calculation does

not warrant reversal.”).

 VIII. Conclusion

 The trial court’s findings of fact and conclusions of law demonstrate “due

regard” to the factors required by North Carolina General Statute § 50-13.4(c), and

12The trial was in October 2017, although the child support order was entered on 21 September 2018.
The evidence in the record and upon which the trial court based the child support order was for 2016
and 2017. Father does not argue he was prejudiced by any delay in entry of the order.

 - 25 -
 KLEOUDIS V. KLEOUDIS

 Opinion of the Court

the trial court did not abuse its discretion in the calculation of the child support

obligation. We therefore affirm the order.

 AFFIRMED.

 Chief Judge MCGEE concurs.

 Judge MURPHY concurs in part and dissents in part.

 - 26 -
No. COA19-145 – Kleoudis v. Kleoudis

 MURPHY, Judge, concurring in part and dissenting in part.

 In cases where the parents earn more than $25,000.00 per month, the trial

court must determine what amount of support is necessary to meet the reasonable

needs of the child based on the individual facts of the case. The trial court must give

due regard to the estates, earnings, conditions, and accustomed standard of living of

the parties and the child in order to reach such a determination. Where the trial

court fails to consider even one of those factors in entering a child support order, the

order amounts to an abuse of discretion and must be vacated. Here, the trial court

failed to consider the respective estates of the parties in reaching its conclusion as to

the amount of child support necessary to meet the needs of the minor child, and the

child support order must be vacated in part and remanded. The remainder of the

trial court’s order in this matter should be affirmed. I respectfully dissent in part.

 BACKGROUND

 Defendant-Appellant Demetrios Kleoudis (“Father”) challenges the trial

court’s Permanent Child Support Order entered 21 September 2018 (“the Support

Order”). The Plaintiff-Appellee in this matter, Christi Kleoudis (“Mother”), and

Father were married in 1986 and two children were born of the nearly thirty-year

marriage. The parties separated on 6 July 2015 and subsequently entered into a

Separation Agreement and Property Settlement on 30 November 2016.
 KLEOUDIS V. KLEOUDIS

 MURPHY, J., concurring in part and dissenting in part.

 On 29 May 2018, the trial court entered a Permanent Child Custody Order as

to Father and Mother’s one minor child, Wilfred.13 This Custody Order provides

Father with eight overnight visits per month and fourteen overnights during the

Summer, and stipulates that Wilfred’s Thanksgiving, Christmas, and Spring Break

holidays shall be equally divided between the parties. The trial court stated its

ultimate goal was for Father to have 40% of the overnights with Wilfred, as was

recommended by the Parenting Coordinator. On 21 September 2018, the trial court

entered the Support Order, ordering Father to pay $2,517.00 per month in child

support beginning the following month and $52,659.00 in child support arrearage for

December 2016 through September 2018. Father timely appeals the Support Order

on numerous grounds.

 ANALYSIS

 A. Standard of Review

 “Child support orders entered by a trial court are accorded substantial

deference by appellate courts and [appellate] review is limited to a determination of

whether there was a clear abuse of discretion.” Leary v. Leary, 152 N.C. App. 438,

441, 567 S.E.2d 834, 837 (2002). The trial court must “make sufficient findings of fact

and conclusions of law to allow the reviewing court to determine whether a judgment,

and the legal conclusions that underlie it, represent a correct application of the law.”

 13 We use a pseudonym throughout this opinion to protect the juvenile’s identity and for ease
of reading.

 2
 KLEOUDIS V. KLEOUDIS

 MURPHY, J., concurring in part and dissenting in part.

Spicer v. Spicer, 168 N.C. App. 283, 287, 607 S.E.2d 678, 682 (2005). We will only

overturn the trial court’s ruling and remand for a new child support order where the

challenging party can show that the ruling “was so arbitrary that it could not have

been the result of a reasoned decision.” White v. White, 312 N.C. 770, 777, 324 S.E.2d

829, 833 (1985).

 B. Father’s Child Support Obligation

 Father’s first argument on appeal is that the Support Order must be vacated

and remanded because “the Trial Court failed to make appropriate findings and

conclusions as to the accustomed standard of living of the parties and the minor child,

the reasonable needs of the minor child, or the estates of the parties[.]” In contrast,

Mother offers:

 The trial court may not have used the specific terms
 “estates” or “accustomed standard of living” in its
 Permanent Child Support Order but there can be no
 genuine dispute that the trial court properly considered the
 accustomed standard of living of the child and each party
 in making the detailed calculations set out in Findings of
 Fact 16 through 23.

The record demonstrates that the trial court failed to consider the parties’ estates,

and therefore abused its discretion in reaching its conclusion regarding the

reasonable needs of the child.

 Our child support statute provides that:

 Payments ordered for the support of a minor child shall be
 in such amount as to meet the reasonable needs of the child
 for health, education, and maintenance, having due regard

 3
 KLEOUDIS V. KLEOUDIS

 MURPHY, J., concurring in part and dissenting in part.

 to the estates, earnings, conditions, accustomed standard
 of living of the child and the parties, . . . and other facts of
 the particular case.

N.C.G.S. § 50-13.4(c) (2019). Where, as here, the parents combined income is greater

than $25,000.00 per month, the Child Support Guidelines are inapplicable and the

trial court must instead make a case-specific determination giving “due regard” to

the reasonable needs of the child and the parents’ respective ability to pay. Meehan

v. Lawrance, 166 N.C. App. 369, 383-84, 602 S.E.2d 21, 30 (2004) (describing the

inapplicability of the Child Support Guidelines in “High Combined Income” cases).

 As both parties correctly note in their briefs, the trial court did not use the

specific terms “estates” or “accustomed standard of living” in reaching its conclusions

regarding child support. Our caselaw does not allow us to conclude that the trial

court’s consideration of the parties’ estates may be implied from its ultimate decision

in this case; likewise, we cannot conclude the trial court complied with its statutory

mandate to do so.

 The purpose of the requirement that the court make
 findings of those specific facts which support its ultimate
 disposition of the case is to allow a reviewing court to
 determine from the record whether the judgment—and the
 legal conclusions which underlie it—represent a correct
 application of the law. The requirement for appropriately
 detailed findings is thus not a mere formality or a rule of
 empty ritual; it is designed instead to dispose of the issues
 raised by the pleadings and to allow the appellate courts to
 perform their proper function in the judicial system.

 4
 KLEOUDIS V. KLEOUDIS

 MURPHY, J., concurring in part and dissenting in part.

Coble v. Coble, 300 N.C. 708, 712, 268 S.E.2d 185, 189 (1980) (internal quotation

marks and citation omitted). It is well-established that the trial court’s conclusions

regarding the reasonable needs of the child and the parties’ relative ability to pay

 must themselves be based upon factual findings specific
 enough to indicate to the appellate court that the judge
 below took due regard of the particular estates, earnings,
 conditions, and accustomed standard of living of both the
 child and the parents. It is a question of fairness and
 justice to all concerned. In the absence of such findings,
 this Court has no means of determining whether the order
 is adequately supported by competent evidence. It is not
 enough that there may be evidence in the record sufficient
 to support findings which could have been made.

Id. (emphasis added) (internal quotation marks, alterations, and citations omitted).

 Although the reference appears in the section discussing “Conditions and

Accustomed Standard of Living,” the majority’s opinion cites Cohen v. Cohen, 100

N.C. App. 334, 396 S.E.2d 344 (1990), to advance the recurring argument that the

trial court’s findings took “due regard” of the statutorily required factors. In Cohen,

we addressed trial court findings regarding a party’s total estate that, while lacking

numerical specificity, still demonstrated the trial court took due regard of the

statutory factors and satisfied the statutory requirements. Cohen, 100 N.C. App. at

339-40, 396 S.E.2d at 347–48.

 However, the trial court in Cohen made significant detailed findings that are

lacking in this case. In Cohen, while the trial court was “understandabl[y] reluctan[t]

to place an exact dollar figure on [mother’s] estate,” the trial court made specific

 5
 KLEOUDIS V. KLEOUDIS

 MURPHY, J., concurring in part and dissenting in part.

findings concerning the dollar amounts of mother’s current debts and the stock father

transferred to mother “during the course of the trial.” Id. at 340, 396 S.E.2d at 347–

48 (emphasis added). Additionally, the trial court acknowledged “equitable

distribution had not yet been made,” and the stock liquidation necessary to determine

the exact dollar amount of the estate rendered “any effort to determine the true net

worth of [mother’s] assets . . . speculative and inappropriate.” Id. at 340, 396 S.E.2d

at 347.

 Unlike the trial court’s specific dollar amount findings concerning important

and current parts of the mother’s estate in Cohen, the trial court in this case did not

find an exact dollar amount concerning debts or marital investment income, interest,

or dividends. Instead, the trial court approximated the “investment income, interest,

and dividends resulting from marital investments” and made no findings regarding

the parties’ other assets or lack thereof. None of the trial court’s factual findings

quoted by the Majority constitute sufficiently specific factual findings showing due

regard to the parties’ estates. Findings 10, 13, 15, and 19 relate to the parties’ income.

Finding 11 references bonuses Mother received in prior years, without a specific

consideration or dollar amount. Finding 12 notes a specific dollar amount of a bonus

that Mother received in 2016; since the parties divided the 2016 bonus equally, the

trial court did not consider the bonus as “[Mother’s] income for purposes of calculating

prospective child support.” However, these funds are certainly a portion of their

 6
 KLEOUDIS V. KLEOUDIS

 MURPHY, J., concurring in part and dissenting in part.

“estates.” Finding 14 approximates that the parties had “the same amount of

investment income, interest, and dividends resulting from marital investments that

were divided equally.” Finding 14 is the closest reference to the parties’ estates, but

the trial court provided no dollar amount based on the evidence. Finding 16

addresses Mother’s expenses. Findings 20-21 reference the parties’ “net ability to pay

child support for the benefit of the child.” None of these findings are specific enough

concerning the parties’ estates to satisfy the statutory requirement.

 As we reiterated in Cohen, “[a] trial judge must make conclusions of law based

on factual findings specific enough to show the appellate courts that the judge took

due regard of the parties’ estates.” Cohen, 100 N.C. App. at 340, 396 S.E.2d at 347-

48 (first emphasis added, second emphasis in original). The trial court’s findings fall

far short of the statutory mandate.

 Although the trial court’s findings of fact comply with most of the statutory

requirements, those findings are silent as to the estates of the parties. Without such

findings, we cannot determine whether the Support Order is adequately supported

by competent evidence and must vacate and remand for further consideration

consistent herewith. As a result of such a remand, Father’s arguments on appeal

regarding the amount of child support he was ordered to pay (sections V and VI in

his brief) would be moot and should be dismissed.

 7
 KLEOUDIS V. KLEOUDIS

 MURPHY, J., concurring in part and dissenting in part.

 C. Wilfred’s Monthly Expenses

 Father’s next argument on appeal is that the trial court failed to consider the

expenses he incurred for Wilfred during visitations and therefore abused its

discretion by not giving Father a visitation credit, which is a credit to the obligor for

expenses incurred for the benefit of the minor child during visitation. It is important

to note that Father tries to avoid framing his argument on this issue as seeking a

visitation credit, but that would be the ultimate effect of ruling for Appellant on this

issue.

 We afford trial courts wide latitude in deciding whether a visitation credit is

appropriate. Jones v. Jones, 52 N.C. App. 104, 109, 278 S.E.2d 260, 264 (1981) (“The

trial court has a wide discretion in deciding initially whether justice requires that a

credit be given under the facts of each case and then in what amount the credit is to

be awarded.”); Goodson v. Goodson, 32 N.C. App. 76, 81, 231 S.E.2d 178, 182 (1977)

(superseded by statute on other grounds) (holding that a visitation credit may be

allowed “when equitable considerations exist which would create an injustice if credit

were not allowed. Such a determination necessarily must depend upon the facts and

circumstances in each case.”). Our caselaw also dictates that visitation credits are

permitted only where justice requires a credit for the obligor. See Brinkley v.

Brinkley, 135 N.C. App. 608, 612, 522 S.E.2d 90, 93 (1999) (noting “the imposition of

a credit is not an automatic right”). Generally, that might be the case where the non-

 8
 KLEOUDIS V. KLEOUDIS

 MURPHY, J., concurring in part and dissenting in part.

custodial parent has the child for more than a third of the year. Cohen, 100 N.C. App.

at 346, 396 S.E.2d at 351 (1990).

 Here, Father has custody of the minor child for eight overnights a month and

on various holidays. The trial court’s “ultimate goal” in setting the custody schedule

was to provide Father with “40% of the overnights each month.” In reviewing this

issue for abuse of discretion, we must be satisfied that “[t]he trial court [has made]

sufficient findings of fact and conclusions of law to allow the reviewing court to

determine whether a judgment, and the legal conclusions that underlie it, represent

a correct application of the law.” Spicer, 168 N.C. App. at 287, 607 S.E.2d at 682. I

am not satisfied Father has shown the trial court’s decision on this issue is manifestly

unsupported by reason, as it did not make any findings of fact or conclusions of law

that allow us to review this issue. On remand, we must direct the trial court to make

specific findings regarding this issue to clarify its decision. See, e.g., Embler v.

Embler, 159 N.C. App. 186, 189, 582 S.E.2d 628, 630-31 (2003) (remanding “for

further findings” without holding the trial court committed error or abused its

discretion).

 D. Father’s Monthly Expenses

 Next, Father argues the trial court erroneously found, in Finding 18, that he

incurs reasonable and necessary monthly expenses for himself in the amount of

$9,813.00 per month. The trial court reached this finding by taking the amount

 9
 KLEOUDIS V. KLEOUDIS

 MURPHY, J., concurring in part and dissenting in part.

Father claimed as his reasonable and necessary monthly expenses in his financial

affidavit ($14,812.68) less (1) $3,000.00 of the $3,974.00 in “Professional fees (CPA,

Attorney Fees, etc.)” listed therein, which the trial court found was related primarily

to this litigation rather than any ongoing monthly expense, and (2) the $2,000.00

listed under “Retirement/Investment[,]” which had already been accounted for as a

voluntary deduction from Father’s gross income. N.C. Child Support Guidelines,

AOC-A-162, Rev. 8/15, 3 (2015) (defining “gross income” as “income before deductions

for . . . retirement contributions, or other amounts withheld from income”). That left

the court with the following equation:

 $14,812.68 - $3,000.00 - $2,000.00 = $9,812.68.

 Again, “our review is limited to a determination [of] whether the trial court

abused its discretion. Under this standard of review, the trial court’s ruling will be

overturned only upon a showing that it was so arbitrary that it could not have been

the result of a reasoned decision.” Spicer, 168 N.C. App. at 287, 607 S.E.2d at 682

(internal citation omitted). Finding 18, regarding Father’s reasonable and necessary

monthly expenses, is not manifestly unsupported by reason. The trial court explained

exactly how it reached that figure and its analysis is legally sound. Finding 18 is

properly affirmed.

 10
 KLEOUDIS V. KLEOUDIS

 MURPHY, J., concurring in part and dissenting in part.

 E. Wilfred’s Primary Residence

 Finally, Father argues the trial court erred by finding Wilfred had resided

primarily with Mother on a “Worksheet A” schedule since 30 November 2016 and

that, pursuant to the Permanent Child Custody Order, Mother would continue to

exercise “Worksheet A” primary custody of the minor child. Father’s argument is

purely semantic and incorrect; he contends the trial court’s reference to “Worksheet

A” indicates improper reliance on the Child Support Guidelines rather than the

factors governing high income cases.

 It is clear from the record the trial court’s reference to “Worksheet A” in

Finding 8 was shorthand for the fact that Wilfred resided primarily with Mother for

at least 243 overnights per year. This reference does not, as Father alleges, reveal

that the trial court was improperly influenced by the guidelines instead of the factors

for high income cases. Meehan, 166 N.C. App. at 383, 602 S.E.2d at 30 (stating the

trial court’s order for child support in a high-income case “must be based upon the

interplay of the trial court’s conclusions of law as to (1) the amount of support

necessary to meet the reasonable needs of the child and (2) the relative ability of the

parties to provide that amount”). This is apparent from the trial court’s other

Findings of Fact and Conclusions of Law, all of which are appropriate for a high-

income case rather than a traditional child support matter governed by the guidelines

and calculated pursuant to Worksheet A. The trial court’s use of the term “Worksheet

 11
 KLEOUDIS V. KLEOUDIS

 MURPHY, J., concurring in part and dissenting in part.

A” custody in Finding 8 was imprecise but, despite Father’s argument to the contrary,

its use of that term is not indicative of an abuse of discretion.

 CONCLUSION

 The trial court failed to consider the parties’ estates in reaching its conclusion

regarding Father’s child support payments. Such a finding is required, and we must

vacate that portion of the trial court’s order and remand for further consideration.

We should also direct the trial court to reconsider its findings and conclusions

regarding a potential visitation credit for Father. In all other regards, the trial court’s

order should be affirmed. For these reasons, I respectfully concur in part and dissent

in part.

 12